UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DARRELL NICKELSON,

                                    Plaintiff,

                                                              9:15-CV-00227
v.
                                                              (GLS/TWD)
BRIAN FISCHER, JOYCE CARVER, LESTER
WRIGHT,

                                    Defendants.
_____

APPEARANCES:                        OF COUNSEL:

DARRELL NICKELSON
Plaintiff pro se
14-A-1966
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403

HON. ERIC T. SCHNEIDERMAN          RYAN W. HICKEY, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for the Remaining Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

       This *pro se* action commenced by Plaintiff Darrell Nickelson pursuant to Title II of the

Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131, *et seq*. ("ADA") and 42 U.S.C.

§ 1983, has been referred to me for Report and Recommendation by the Hon. Glenn T. Suddaby,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

The matter is now before the Court on Defendants' motion to dismiss Plaintiff's Complaint (Dkt. No. 1) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 20), and Plaintiff's motion for leave to amend his Complaint by substituting the three original defendant officials with their successors, named as defendants solely in their official capacities. (Dkt. No. 35.) Plaintiff has opposed Defendants' motion to dismiss. (Dkt. Nos. 35; 39-1.) Defendants have opposed Plaintiff's motion to amend. (Dkt. No. 37.) For reasons that are explained below, the Court recommends that Plaintiff's motion to amend his complaint to substitute the successors of the three named Defendants in their official capacities be granted, and that Defendants' motion to dismiss, deemed by the Court to be directed to Plaintiff's Complaint, as amended, be denied.

## I.    FACTUAL BACKGROUND

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Service ("DOCCS") and is presently confined in Mid-State Correctional Facility ("Mid-State"). (Dkt. No. 29.) At the time this action was commenced, Plaintiff was confined at Great Meadow Correctional Facility ("Great Meadow") and immediately prior to being transferred to Mid-State was housed at Fishkill Correctional Facility ("Fishkill"). (Dkt. Nos. 1 at ¶ 3; 35 at ¶ 9; 39-1 at 2.)

Plaintiff most recently entered DOCCS custody on December 14, 2013. *Id*. at ¶ 7. On July 26, 2000, prior to his incarceration, Plaintiff was involved in a car accident that resulted in a spinal injury.[1] *Id*.; Dkt. No. 35 at ¶ 5. Plaintiff has been diagnosed with multiple herniated discs

---

[1] Although Plaintiff has alleged that the accident resulting in a spinal injury occurred on July 26, 2000, medical records annexed to his complaint show that he had an MRI of the lumbar spine on June 26, 2000, suggesting that either the date of the accident is incorrect or Plaintiff had

and spinal stenosis.  (Dkt. No. 1-1 at 7, 14, 17, 19-20.)

While confined at Great Meadow, Plaintiff fell backwards when his back gave out as he was going upstairs and sustained further injuries to his back.  (Dkt. Nos. 1 at ¶ 8; 1-1 at 16-17.)  On June 19, 2014, Great Meadow Facility Health Services Director, Dr. Karandy, ordered the following special needs for Plaintiff: (1) that he be fed in his cell until June 18, 2015; (2) that he lock on the flats until June 18, 2015; and (3) that he be issued a back brace, cane, and a tens unit with supplies until June 18, 2015.[2]  (Dkt. No. 1-1 at 1.)

Dissatisfied with the accommodations ordered by Dr. Karandy, on July 9, 2014, Plaintiff submitted a Request for Reasonable Accommodation, in which he requested that because of the limitations on his ability to ambulate stairs and ramps due to his severe spinal injury that caused spasms and falling, he be transferred to a "facility where stairs are not at issue and where [he could] receive appropriate medical care." *Id*. at 1-1 at 5.  On August 26, 2014, in response to Plaintiff's Request, Dr. Karandy recommended that Plaintiff be transferred to a flats facility because of arthritis of the spine.  *Id*. at 5.  A reasonable accommodation determination of Plaintiff's request, modified Dr. Karandy's recommendation by approving having Plaintiff lock on flats, was issued on August 27, 2014.  *Id*.

On or about October 7, 2014, Plaintiff filed a grievance requesting that Dr. Karandy's recommendation that he be moved to a flats facility be adopted.  *Id*. at 3.  Plaintiff complained that being housed on the flats (bottom tier) was an inadequate accommodation because it did not

_____

a pre-existing spinal problem.  (Dkt. No. 1-1 at 7.)

   [2]  "Flats" means that Plaintiff should be issued housing on the first floor of the correctional facility.

address his right to outdoor exercise or allow him safe access to anywhere in the facility as needed to aid in his rehabilitation. *Id.* The Inmate Grievance Resolution Committee rejected the action requested by Plaintiff on November 3, 2014, writing:

> The Committee advises grievant that his action requested is unfavorable. Although the FHSD recommended that grievant be transferred to a flats facility, and issued grievant a flats order in the interim, that was merely a recommendation subject to review by this facility administration. The DSP, in his review capacity, sanctioned the flats order but does not have the authority to direct a transfer. Such authority is at the discretion of Central Office, and all Requests for Reasonable Accommodations are automatically reviewed by the Americans with Disabilities Department at Central Office.

*Id.* at 4.

After being transferred to Fishkill, in or about June of 2014, Plaintiff submitted a second Request for Reasonable Accommodation seeking the same accommodation as in his July 9, 2014, Request at Great Meadow. (Dkt. No. 39-1 at 2.) Plaintiff was found by the physician who did the medical verification to have mild arthritis of the spine and left hip. *Id*. at 2. The physician found Plaintiff capable of climbing two flights of stairs. *Id.* The reasonable accommodation determination was that Plaintiff should not be housed above the second floor. *Id*.

Plaintiff was thereafter transferred to Mid-State. (Dkt. No. 35 at ¶ 9.) On December 2, 2015, while at Mid-State, Plaintiff submitted a third Request for Reasonable Accommodation seeking the same accommodation as in the first two. (Dkt. No. 39-1 at at 3-4.) Plaintiff has submitted two fully processed versions of the third Request, each with a different medical verification and different reasonable accommodation determination. *Id*.

In one, the medical verification was completed on December 8, 2015, by V.R. Mannava, M.D., a physician at Mid-State.[3]  *Id*. at 4.  Plaintiff was found to have multiple herniated discs, spinal stenosis, and back pain that resulted in impaired ambulation.  *Id*.  On December 29, 2015, K. McDaniel ("McDaniel"), Assistant DSP at Mid-State, approved Plaintiff's transfer to a "flat" facility.  *Id*.  Plaintiff signed the inmate receipt on January 8, 2016, and indicated his agreement with the determination.  *Id*.

In the other, the initial medical verification was done on December 24, 2015, by the Regional Medical Director, who found that Plaintiff had no significant disability and no functional limitations.  *Id*. at 3.  Plaintiff's Request was denied by McDaniel based upon the lack of medical justification on December 29, 2015, the same day she had approved Plaintiff's transfer to a flats facility in the other version.  *Id*.  Plaintiff signed the inmate receipt on December 29, 2015, and indicated his disagreement with the determination.[4]  *Id*.

Plaintiff has alleged that he has been denied reasonable accommodations for his disability in violation of Title II of the ADA.  (Dkt. No. 1 at ¶¶ 11-15.)  Plaintiff's Complaint has also been construed as alleging a claim that Defendants have violated his Eighth Amendment

---

[3]  *See Berman v. Durkin*, No. 9:13-CV-0136 (LEK/RFT), 2015 WL 1481769, at * 5, 2015 U.S. Dist. LEXIS 41014, at * 6 (N.D.N.Y. March 31, 2015) (identifying Dr. Mannava as a physician at Mid-State).

[4]  In a January 19, 2016, letter to the Court accompanying the two versions of his December 2, 2015, Request for Reasonable Accommodation, Plaintiff wrote "I have followed all procedures asked of me to ensure my move to a 'flat facility', but all I have been getting is a run around as the enclosed papers clearly show.  As you will read from the same papers with the same dates, the differences of opinions and facts."  (Dkt. No. 39 at 1.)  Defendants were given an opportunity to respond to the documents submitted by Plaintiff in opposition to their motion to dismiss but elected not to do so.  *See* Dkt. No 41, January 25, 2016, Text Order allowing Defendants until February 5, 2016, to file a supplemental reply.

rights as a result of their deliberate indifference to his serious medical needs. (Dkt. No. 33 at 1.) Plaintiff has not asserted any claim for money damages in his Complaint. (Dkt. No. 1.) Liberally construed, Plaintiff's Complaint appears to seek injunctive relief in the form of a mandatory injunction ordering the reasonable accommodation he seeks, namely, transfer to a flats facility as recommended by Dr. Karandy in response to Plaintiff's July 9, 2014, Request for Reasonable Accommodation submitted at Great Meadow, and as subsequently approved by McDaniel in one of the responses to Plaintiff's December 2, 2015, Request for Reasonable Accommodation submitted at Mid-State.[5] (Dkt. Nos. 1-1 at 5; 39-1 at 4.) Plaintiff has asserted no claim for money damages. (Dkt. Nos. 1; 35.)

## II. LEGAL STANDARDS

### A. Motion to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint should be "freely" granted "when justice so requires." Fed.R.Civ.P. 15(a). A motion to amend should not be denied unless there is evidence of undue delay, bad faith, prejudice to the non-movant, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The decision to grant or deny a motion to amend is within the sound discretion of the district court. *Id*.

### B. Rule 12(b)(6) Motion to Amend for Failure to State a Claim

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which

---

[5] The Court's assessment of the relief sought by Plaintiff in his Complaint finds support in his motion for a preliminary injunction seeking a transfer from Fishkill to a "medium flats facility," which was denied by the District Court on October 30, 2015. (Dkt. Nos. 15 at 2; 33.)

requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not shown that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citation and punctuation omitted).

A complaint may be dismissed, pursuant to Rule 12(b)(6), only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly*. 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id*. (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (A court may consider "any written instrument attached [to the complaint] as an exhibit or documents incorporated in it by reference."). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint."[6] *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 and n.41, 2008 U.S. Dist. LEXIS 110029, at *26-27 and n.41 (N.D.N.Y. Oct. 22, 2008)[7] (collecting cases); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint."), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss).

---

[6] In this case, the Court has considered Plaintiff's Complaint and its attachments, his verified Amended Complaint & Response to Defendant's Motion to Dismiss, and his supplemental document submission (Dkt. Nos. 1;35; 39; and 39-1) in making its recommendation on Defendants' Rule 12(b)(6) motion to dismiss.

[7] The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Where a party is proceeding pro se, the court is obliged to "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe pro se complaints liberally even after *Twombly*).

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that a "better pleading will not cure it." *Id.* (citation omitted).

## III. ANALYSIS

### A. Plaintiff's Motion to Amend

In his Amended Complaint & Response to Defendant's Motion to Dismiss, Plaintiff states that "[t]he foregoing writing is made pursuant to the Federal Rules of Civil Procedure § 15(c)(1)(C) to amend the original complaint by replacing the named defendants with the updated employees for D.O.C.C.S. in their official capacity."[8] (Dkt. No. 35 at ¶ 1.) More specifically, Plaintiff seeks to replace former DOCCS Commissioner, Brian Fischer ("Fischer"),with Acting DOCCS Commissioner, Anthony J. Annucci ("Annucci"); former

---

[8] It is well established that "the State is the real party in interest for [a] plaintiff's claims against the individual defendants in their official capacities." *Alster v. Goord*, 745 F. Supp. 2d 317, 338 (S.D.N.Y. 2010) (citing *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 451 (E.D.N.Y. 2007).

DOCCS Chief Medical Officer, Lester Wright ("Wright"), with DOCCS Chief Medical Officer, Carl J. Koenigsmann ("Koenigsmann"); and former DOCCS Director of Inmate Movement and Placement, Joyce Carver ("Carver"), with DOCCS Director of Inmate Movement and Placement, Theresa Knapp-David (incorrectly spelled "Davis" by Plaintiff) ("Knapp-David"). (Dkt. No. 35 at ¶¶ 2, 6-7, 11.)

Plaintiff has expressed no intent to sue Annucci, Koenigsmann, and Knapp-David in their individual as well as their official capacities. (*See generally* Dkt. No. 35.) Furthermore, Plaintiff no longer includes Fischer, Wright, and Carver in the caption and has given no indication of an intent on his part to keep them in the lawsuit as defendants in any capacity. *Id.* Therefore, the Court has concluded, as Plaintiff has represented in his Amended Complaint & Response to Defendant's Motion to Dismiss, *id.* at ¶ 1, that it is his intent that this lawsuit proceed with Annucci, Koenigsmann, and Knapp-David as the sole Defendants in their official capacity only.

Under Federal Rule of Civil Procedure 25(d), a public "officer's successor is automatically substituted as a party" when an "officer who is a party in an official capacity . . . ceases to hold office while the action is pending."[9] *See, e.g., Selah v. Fischer*, No. 9:09-cv-1363 (GLS/DEP), 2015 WL 1893340, at *7 n.14, 2015 U.S. Dist. LEXIS 49568, at *23 n.14 (N.D.N.Y. April 15, 2015) (automatically substituting Annucci for Fischer under Rule 25(d)). Because Fischer, Wright, and Carver, all sued in their official capacities, had retired prior to the commencement of this action, substitution of Annucci, Koenigsmann, and Knapp-David is arguably not automatic under Rule 25(d). Therefore, the Court recommends that Plaintiff's

---

[9] The Court takes judicial notice of the retirement of Defendants Fischer, Wright, and Carver from the DOCCS positions in which they have been sued in their official capacities prior to the commencement of this lawsuit. (*See* Dkt. No. 20-1 at 9-10 and n.3&4.)

motion to amend his Complaint for the sole purpose of substituting Annucci, Koenigsmann, and Knapp-David as defendants in their official capacity be granted, and that Annucci, Koenigsmann, and Knapp-David, in their official capacity, be deemed to have stepped into the shoes of Fischer, Wright, and Carver on Defendants' Rule 12(b)(6) motion to dismiss.[10]

## B.     Plaintiff's Claim Under Title II of the ADA

### 1.     Legal Requirements for a Violation of Title II of the ADA

Title II of the ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In general, plaintiffs who seek to state a claim for disability under the ADA "must demonstrate that (1) they are 'qualified individuals' with a disability[11]; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities."[12] *Henrietta D. v.*

---

[10]  Inasmuch as the State is the real party in interest regardless of whether the action proceeds with the original Defendants or the substituted Defendants in their official capacities, the Court finds no prejudice to Annucci, Koenigsmann, and Knapp-David in their substitution Fischer, Wright, and Carver on the motion to dismiss. *See Alster*, 745 F. Supp. 2d at 338.

[11]  Under the ADA, the term "disability" with respect to an individual means "a physical or mental impairment that substantially limits one or more major life activities of such individual"; "a record of such impairment"; or "being regarded as having such an impairment." 42 U.S.C. §12102(1). For purposes of "being regarded as having such as impairment," an individual need only establish "that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairments limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3).

[12]  As noted above, Defendants Annucci, Koenigsmann, and Knapp-David have been sued solely in their official capacities. Because state officials may not be sued in their individual

*Bloomberg*, 331 F.3d 261, 272-73 (2d Cir. 2003).

"The purpose of [Title II of the ADA] is to 'eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and able-bodied.'" *Maccharulo v. New York State Dept. of Corr. Servs.*, No. 08 Civ 301 (LTS), 2010 WL 2899751, at *2, 2010 U.S. Dist. LEXIS 73312, at *7 (S.D.N.Y. July 21, 2010) (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)). Under Title II of the ADA, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual "to have access to and take a meaningful part in public services." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir 2004); *Disabled In Action v. Board of Elections of New York*, 752 F.3d 189, 197 (2d Cir. 2014) ("A public entity discriminates against a qualified individual with a disability when it fails to provide 'meaningful access' to its benefits, programs, or services.")

The Supreme Court has held that state prisons "fall squarely within the statutory definition of 'public entity'" in Title II of the ADA, and state inmates may maintain ADA claims. *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Hilton v. Wright*, 673 F.3d 120, 128 (2d Cir. 2012) (DOCCS treated as a public entity under Title II of the ADA).

2.  Analysis of Whether Plaintiff has Stated a Claim for Violation of Title II of the ADA

The Court finds that the Plaintiff has stated a claim for violation of Title II of the ADA

---

capacity under Title II of the ADA, if Plaintiff were suing them in their individual capacities, they would be entitled to dismissal of the claim with prejudice. *See Garcia v. State of N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001).

against Defendants in their official capacities through the allegations in his Complaint and the documents attached thereto, his Amended Complaint & Response to Defendant's Motion to Dismiss, and his supplemental document submission.[13]  (Dkt. Nos. 1; 35; 39; and 39-1.)

Plaintiff has made a plausible showing that he is a qualified individual with a disability under Title II of the ADA.  Plaintiff's medical records reveal that he suffers from herniated discs and spinal stenosis.  (Dkt. No. 1-1 at 7, 9-15.)  According to the Ambulatory Health Record dated June 23, 2014, Plaintiff fell backwards when his back gave out while he was going up stairs.  *Id*. at 21.  Medical records appear to indicate that Plaintiff sustained further injuries to his back as a result of the fall.  *Id*. at 16-20.  In addition, after Plaintiff's fall, Dr. Karandy ordered Plaintiff to be locked on flats, fed in his cell, given a back brace and cane, and to also be given a tens unit and supplies for a period of a year.  *Id.* at 1.

Furthermore, as discussed above, the law is well settled that DOCCS is subject to the ADA.  The Court finds that Plaintiff has also made a plausible showing that he has been denied the opportunity to participate in or benefit from specific DOCCS services, programs, or activities.  The Court acknowledges that Plaintiff's Complaint (Dkt. No. 1) and Amended

---

[13]  Plaintiff has not asserted a claim for money damages against Annucci, Koenigsmann, or Knapp-David in their official capacities in his Complaint or Amended Complaint & Response to Defendant's Motion to Dismiss.  (Dkt. Nos. 1 and 35.)  Therefore, the Court finds it unnecessary to address whether a claim for money damages by Plaintiff could survive an Eleventh Amendment bar on this motion to dismiss.  *See Garcia,* 280 F.3d at 109-10 (Eleventh Amendment sovereign immunity abrogated by Congress where plaintiff can establish that Title II violation was motivated by discriminatory animus or ill will based on plaintiff's disability); *Bolmer v. Oliveira*, 594 F.3d 134, 146-48 (2d Cir. 2010) (requirement of showing of discriminatory animus or ill will based on plaintiff's disability is not applicable when abrogation of sovereign immunity is supported by the enforcement of due process rights); *see also Dean v. University of Buffalo School of Medicine and Biomedical Sciences*, 804 F.3d 178, 194-95 (2d Cir. 2015) (acknowledging that the Supreme Court decision in *United States v. Georgia*, 546 U.S. 151, 159 (2006) had called *Garcia's* validity into question but not deciding the issue).

Complaint & Response to Defendant's Motion to Dismiss (Dkt. No. 35) are lacking in detailed factual allegations regarding the denial of opportunities. A copy of the grievance Plaintiff filed from the determination of his Request for Reasonable Accommodation at Green Meadow does, however, contend that being locked on flats, the accommodation granted at Green Meadow, was inadequate because it did not address his right to outdoor exercise or allow him safe access to anywhere in the facility as needed to aid his rehabilitation. (Dkt. No. 1-1 at 3.)

Furthermore, in August of 2014, Dr. Karandy recommended that Plaintiff be housed in a flats facility due to arthritis of the spine. *Id*. at 5. Subsequently, in December of 2015, Dr. Mannava found that Plaintiff was disabled due to multiple herniated discs and spinal stenosis and had impaired ambulation, and in one version of Plaintiff's December 2, 2015, Request for Reasonable Accommodation, McDaniel approved Plaintiff's transfer to a flats facility on December 29, 2015. (Dkt. No. 39-1 at 4.)

For purposes of Defendants' motion to dismiss, the Court can infer from Plaintiff's grievance and from the medical verifications in Plaintiff's Requests for Reasonable Accommodation that failing to house him in a flats facility might realistically result in his being denied the opportunity to participate in or benefit from DOCCS services, programs, or activities that required him to climb stairs.

In light of the foregoing, the Court recommends that Defendants' motion to dismiss Plaintiff's claim under Title II of the ADA be denied.

3. <u>Claim for Injunctive Relief Under Title II of the ADA</u>

The Second Circuit has held that under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123, 155-56 (1908), claims for prospective injunctive relief may be pursued under Title II of the

ADA.  *See Henrietta D*., 331 F.3d at 287-88 (Eleventh Amendment does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law).  The Court has construed Plaintiff's Complaint as seeking a mandatory injunction ordering that he be transferred to a flats facility as recommended by Dr. Karandy in response to Plaintiff's July 9, 2014, Request for Reasonable Accommodation and as approved by McDaniel in one version of Plaintiff's Mid-State Request for Reasonable accommodation.  (*See* Dkt. Nos. 1 at ¶ 15; 1-1 at 5; 39-1 at 4.)

Defendants have argued in their Memorandum of Law that Plaintiff's request for injunctive relief is moot because he is no longer housed at Green Haven, and "[i]t is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."  *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996).  However, Plaintiff has not sued Green Haven officials but rather DOCCS, through its officials sued in their official capacities, and Plaintiff's reasonable accommodation claim arguably falls within the exception for challenged actions that are "capable of repetition yet evading review."  *See Pugh v. Gordon*, 571 F. Supp. 2d 477, 488 (S.D.N.Y. 2008) (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

In fact, it appears from the allegations in Plaintiff's Amended Complaint & Response to Defendant's Motion to Dismiss (Dkt. No. 35), as well as his most recent document submission (Dkt. Nos. 39; 39-1), that he intends to expand his ADA claim to include his present confinement at Mid-State and the recent inconsistent determinations of his third Request for Reasonable Accommodation.  (Dkt. No. 35 at ¶¶ 9-10.)  *See Robles*, 2008 WL 4693153, at * 6 and n.41 (finding it appropriate to consider a pro se litigant's papers in opposition to a motion to dismiss as effectively amending the allegations of the complaint where consistent).  Since Plaintiff is

presently housed at Mid-State, the Court finds that his conditions at Mid-State are relevant to his reasonable accommodations claim under Title II of the ADA and to his request for injunctive relief, and that his request for injunctive relief is not moot.

### C. Plaintiff's Eighth Amendment Claim for Inadequate Medical Care

Plaintiff's Complaint has been construed as alleging a claim of deliberate indifference to a serious medical condition in violation of his Eighth Amendment rights under 42 U.S.C. § 1983. (Dkt. Nos. 20-1 at 8; 33 at 1.)  Defendants seek dismissal of the medical deliberate indifference claim for failure to state a claim.  (Dkt. Nos. 20-1 at 8-14; 37 at 8-9.)

Claims that prison officials have intentionally disregarded an inmate's serious medical needs fall under the Eighth Amendment umbrella of protection from the imposition of cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Prison officials must ensure that inmates receive adequate medical care. *Id*. (citing *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)).  A claim that prison officials have intentionally disregarded an inmate's serious medical needs has both objective and subjective elements. *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).  "The plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Id*. at 72 (citation and internal quotation marks omitted).  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citation omitted).  "[N]ot every lapse in medical care is a constitutional wrong.  Rather, a prison official violates the Eighth Amendment only when the two requirements are met." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citation and

internal quotation marks omitted).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted); *accord Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, *i.e.*, an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Id*. at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66.  To establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702; *see also Salahuddin*, 467 F.3d at 280 (mental state for deliberate indifference "requires that the charged official act or fail to act while actually aware of a substantial risk that serious harm will result.").  Significantly, non-medical personnel may engage in deliberate indifference if they intentionally deny or delay

access to medical care. *See Jean v. Barber*, No. 9:09-cv-430 (MAD/GHL), 2011 WL 2975218, at *5, 2011 U.S. Dist. LEXIS 79499, at *13 (N.D.N.Y. July 21, 2011).

The Court finds solely for purposes of Defendants' motion to dismiss for failure to state a claim that Plaintiff has made a plausible showing that he has a serious medical condition. The Court also finds that solely for purposes of this motion, Plaintiff has made a plausible showing of deliberate indifference to his serious medical needs by various non-party DOCCS officials who have been involved in the denial of Plaintiff 's physician recommended transfer to a flats facility.[14] The Court's finding is based upon Plaintiff's medical records showing, *inter alia*, disc herniations and spinal stenosis (Dkt. No. 1-1 at 7, 9, 13-20); Plaintiff's Ambulatory Health Record reporting that he had fallen backwards going up stairs because his back gave out, *id*. at 21; the findings by both Dr. Karandy and Dr. Mannava that Plaintiff has spinal disabilities that create problems in ambulating and, according to Dr. Karandy warranted Plaintiff's transfer to a flats facility, *id*. at 5; Dkt. No. 39-1 at 3-4; and the conflicting Reasonable Accommodation Request determinations by McDaniel. (Dkt. No. 39-1 at 3-4.)

Based upon the foregoing, the Court recommends that Defendants' motion to dismiss

---

[14] Plaintiff's Eighth Amendment medical indifference claim is asserted against Defendants in their official capacities only, and the State is therefore the real party in interest. *See Alster,* 745 F. Supp. 2d at 338. The Eleventh Amendment does not bar a claim for prospective injunctive relief against defendants sued in their official capacities for violation of an inmate's Eighth Amendment medical indifference claim. *See, e.g., Day v. Gallagher*, No. 3:15-cv-001574 (JAM), 2015 WL 9482895, at *2, 2015 U.S. Dist. LEXIS 169972, at *3 (D. Conn. Dec. 21, 2015) (Eleventh Amendment does not bar claims for injunctive relief against state officials sued in their official capacities). In addition to the DOCCS officials identified on Plaintiff's Requests for Reasonable Accommodation, the IGRC, in denying Plaintiff's grievance, explained that "authority [to direct a transfer] is at the discretion of Central Office, and all Requests for Reasonable Accommodations are automatically reviewed by the Americans with Disabilities Department at Central Office." (Dkt. No. 1-1 at 4.)

Plaintiff's Eighth Amendment medical indifference claim be denied.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's motion for leave to amend his Complaint (Dkt. No. 35) be **GRANTED** for the sole purpose of substituting Annucci, Koenigsmann, and Knapp-David as defendants in their official capacities, and that Annucci, Koenigsmann, and Knapp-David, in their official capacities, be deemed to have stepped into the shoes of Fischer, Wright, and Carver for purposes of Defendants' Rule 12(b)(6) motion to dismiss; and it is further

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's Complaint, as amended, for failure to state a claim (Dkt. No. 20) be **DENIED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with a copies of the unpublished decision cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:   February 16, 2016
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2015 WL 1481769
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Barry BERMAN, Plaintiff,

v.

Charles DURKIN, Sergeant; Donald Mitchell;
J. Devereaux; John Does # 1–3, Correctional
Officers; John Does # 4–5, Sergeants;
Longerman, Inspector General; Thomas
Lavalley, Superintendent, Clinton Correctional
Facility; C. Lozier, Deputy Superintendent
of Administration, Mid–State Correctional
Facility; Dr. V Mannava; Dr. S. Ramineni, Mid–
State Correctional Facility; Dr. Koeningsmann,
Chief Medical Officer, Nysdoccs, Defendants.

No. 9:13–CV–0136 (LEK/RFT).
|
Signed March 31, 2015.

**Attorneys and Law Firms**

Barry Berman, Rochester, NY, Pro se.

Hon. Eric Schneiderman, Attorney General of the State of
New York, The Capitol, Joshua E. Mcmahon, Esq., Assistant
Attorney General, of Counsel, Albany, NY, for Defendants.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a
Report–Recommendation filed on March 3, 2015, by the
Honorable Randolph F. Treece, U.S. Magistrate Judge,
pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt.
No. 112 ("Report–Recommendation").*Pro se* Plaintiff Barry
Berman ("Plaintiff") timely filed Objections. Dkt. No. 117
("Objections"). [1]

Within fourteen days after a party has been served with
a copy of a magistrate judge's report—recommendation,
the party "may serve and file specific, written objections
to the proposed findings and recommendations."FED. R.
CIV. P. 72(b); L.R. 72.1(c). If no objections are made,

or if an objection is general, conclusory, perfunctory, or
a mere reiteration of an argument made to the magistrate
judge, a district court need review that aspect of a report-
recommendation only for clear error. *Chylinski v. Bank of
Am., N.A.,* 434 F. App'x 47, 48 (2d Cir.2011); *Barnes
v. Prack,* No. 11–CV–0857, 2013 WL 1121353, at \*1
(N.D.N.Y. Mar. 18, 2013); *Farid v. Bouey,* 554 F.Supp.2d
301, 306–07 & n. 2 (N.D.N.Y.2008); see also *Machicote
v. Ercole,* No. 06 Civ. 13320, 2011 WL 3809920, at \*2
(S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections
to a Report and Recommendation must be specific and clearly
aimed at particular findings in the magistrate's proposal, such
that no party be allowed a second bite at the apple by simply
relitigating a prior argument.")."A [district] judge ... may
accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge."28 U.S.C. §
636(b).

Plaintiff first argues that Judge Treece erred in dismissing
four supervisory Defendants for lack of personal involvement
in Plaintiff's Eighth Amendment claims. Specifically,
Plaintiff argues that: (1) Defendants C. Lozier ("Lozier")
and Dr. Koeningsmann ("Koeningsmann") were aware of
the alleged Eighth Amendment violations because Plaintiff
had written to and received responses from both Lozier
and Koeningsmann regarding these violations; and (2)
Plaintiff spoke with Lozier weekly about these issues and
followed up with letters regarding the "conversations and
the promises that never materialized."Objs. at 4–5. However,
this correspondence was not alleged in any of Plaintiff's
complaints. *See generally* Dkt. Nos. 1; 15 ("Amended
Complaint"); 92–1. Indeed, Plaintiff's allegations of personal
involvement by these Defendants in all three iterations of
the Complaint are wholly conclusory. Furthermore, though
Plaintiff makes additional arguments in his Objections
regarding the personal involvement of other supervisory
Defendants, the Court has reviewed these Objections and
finds them either conclusory, or mere reiterations of the
arguments made in the Amended Complaint. *See* Objs. at 5–
6, 8–9. The Court therefore finds that Judge Treece properly
concluded that these supervisory Defendants lacked sufficient
personal involvement to be held liable under § 1983.

**\*2** Next, Plaintiff argues that Judge Treece erred in
dismissing Plaintiff's claims under Title II of the Americans
with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.,*
and § 504 of the Rehabilitation Act of 1973 ("Rehabilitation
Act"), 29 U.S.C. § 794 *et seq.*"The Second Circuit instructs
that the purpose of [the ADA] is 'to eliminate discrimination

on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied.' " *Jackson v. DeMarco,* No. 10–CV–5477, 2011 WL 1099487, at *2 (E.D.N.Y. Mar. 21, 2011) (quoting *Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir.1998)). Therefore, to state a claim, a plaintiff must allege "that his or her mistreatment was motivated by either discriminatory animus or ill will due to disability." *Id.* (internal citation and quotation omitted); *see also Rothschild v. Grottenthaler,* 907 F.2d 286, 289–90 (2d Cir.1990) (stating similar test under the Rehabilitation Act).

Judge Treece found that Plaintiff had alleged that he was disabled, and that he had been excluded from certain programs or services, as required by both Acts, but that Plaintiff had failed to allege any facts demonstrating that he had been excluded from or denied services *due to* his disability. *See* Report–Rec. at 21–23. Plaintiff objects to this finding on the grounds that: (1) the first alleged assault occurred because Plaintiff told the offending guards about his mental disability, Objs. at 11; and (2) Plaintiff specifically alleged that he was denied medical care due to his mental disability, *id.* at 12.

With respect to Plaintiff's first argument, Plaintiff's Amended Complaint alleges the following facts: (1) a pencil in Plaintiff's pocket accidentally pricked a guard, Am. Compl. ¶ 18; (2) when the guard came to Plaintiff's cell, Plaintiff apologized and told the guard he suffered from Attention Deficit Disorder, *see id.* ¶ 19; (3) "[a]pproximately 10 minutes later," the guard and other officers physically assaulted Plaintiff, *id.* ¶¶ 20–25; and (4) one of the guards told Plaintiff that he was "lucky he was not in [the hospital] because he stabbed an officer,"*id.* ¶ 25. Plaintiff argues that the timing of this attack suggests that the guards assaulted Plaintiff due to his mental disability. Objs. at 11. However, the only fact to suggest that this alleged assault occurred because of Plaintiff's disability is that Plaintiff told the guards he suffered from Attention Deficit Disorder. Yet, according to Plaintiff's own allegations, a guard involved specifically told him that the assault was retaliation for pricking another guard with a pencil. *see id.*The Court therefore finds that Plaintiff has not alleged sufficient facts to demonstrate that he was subject to assault due to his disability.

Plaintiff further argues that he was denied adequate medical care due to his mental disability when Dr. Ramineni refused to treat Plaintiff's ailments, stating that they were "in his head." Objs. at 12; *see also* Am. Compl. ¶ 123. The Court finds this insufficient to allege that Plaintiff was denied medical care due to a mental disability. Though Judge Treece found that Plaintiff had stated a claim of medical indifference, "[The ADA is] not ... violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."*Elbert v. N.Y. State Dep't of Corr. Servs.,* 751 F.Supp.2d 590, 596 (S.D.N.Y.2010) (quotation omitted) (alteration in orignal). The Court therefore finds that Judge Treece did not err in finding that Plaintiff had not sufficiently stated a claim under the ADA or Rehabilitation Act.

**\*3** Plaintiff's remaining Objections are either conclusory, irrelevant, or reiterations of arguments made in the pleadings. *See* generally Objs. Accordingly, the Court has reviewed the remainder of the Report–Recommendation for clear error and has found none.

Accordingly, it is hereby:

**ORDERED,** that the Report–Recommendation (Dkt. No. 112) is **APPROVED and ADOPTED in its entirety;** and it is further

**ORDERED,** that Defendants' partial Motion (Dkt. No. 86) for judgment on the pleadings is **GRANTED in part** as to: (1) Plaintiff's claims under the Americans with Disabilities Act and Rehabilitation Act; (2) Plaintiff's claims against Defendants in their official capacities; and (3) Plaintiff's claims against Defendants C. Lozier, Dr. Koeningsmann, Thomas LaValley, and Longerman; and it is further

**ORDERED,** that Defendants' partial Motion (Dkt. No. 86) for judgment on the pleadings is **DENIED in part** as to Plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical needs; and it is further

**ORDERED,** that Plaintiff's ADA and Rehabilitation claims are **DISMISSED with prejudice;** and it is further

**ORDERED,** that Defendants C. Lozier, Dr. Koeningsmann, Thomas LaValley, and Longerman are **DISMISSED** as Defendants in this case; and it is further

**ORDERED,** that Plaintiff's Motion (Dkt. No. 92) to amend is **GRANTED in part** to the extent Plaintiff seeks to identify G. King as John Doe # 4 and add additional facts in support of the Eighth Amendment medical indifference claim, and **DENIED** in all other respects; and it is further

**ORDERED,** that the Clerk substitute G. King as John Doe # 4; and it is further

**ORDERED,** that Plaintiff submit a proposed Amended Complaint consistent with the Report–Recommendation; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### *REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

On February 1, 2013, [1] *pro se* Plaintiff Barry Berman, while incarcerated at Mid–State Correctional Facility, filed a civil rights action pursuant to 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.;* and § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*, stemming from his confinement at both Clinton and Mid–State Correctional Facilities. Dkt. No. 15, Am. Compl. [2] In particular, Plaintiff claims that he was assaulted by Clinton correctional officers and sergeants in violation of the Eighth Amendment, retaliated against for protected speech in violation of the First Amendment, and excluded from prison programs and services due to his disability in violation of Title II of the ADA and the Rehabilitation Act. *See generally id.;*Dkt. No. 19, Mot. for Recons. [hereinafter "Supp. Aff."]. [3]

**\*4** On June 10, 2014, Defendants filed a partial Motion for Judgment on the Pleadings, pursuant to 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 86. On July 1, 2014, Plaintiff filed his Response in opposition thereto. Dkt. No. 94. Defendants filed their Reply on August 11, 2014. Dkt. No. 101. In the interim, Plaintiff filed a Motion to Amend on June 23, 2014. Dkt. No. 92. On August 11, 2014, Defendants submitted a Response in opposition. Dkt. No. 100. Plaintiff submitted his Reply on September 10, 2014. Dkt. No. 104.

### I. DISCUSSION

Defendants urge this Court to dismiss Plaintiff's Eighth Amendment medical indifference claim as well as his ADA and Rehabilitation Act claims, and argue that Defendants Longerman, LaValley, Lozier, and Dr. Koeningsmann should be dismissed from this action due to a lack of personal involvement. [4] *See* Dkt. No. 86–1, Defs.' Mem. of Law. The Court will first discuss whether the operative pleading can survive the dispositive motion, and then will address Plaintiff's request to amend.

### A. Standard of Review

"The standard for granting a [FED. R. CIV. P.] 12(c) motion for judgment on the pleadings is identical to that of a [FED. R. CIV. P.] 12(b)(6) motion for failure to state a claim."*Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir.2001)*. On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)*. The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."*Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980)*."The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."*Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)* (*overruled on other grounds by*Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL–CIO v. Schermerhorn, 373 U.S. 746, 754, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963); see also Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir.2008)*. Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."*Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)*. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."*Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face."*Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Ashcroft v. Iqbal, 556 U.S. at 697* (citing *Twombly* )."A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Ashcroft v. Iqbal,* 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."*Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The process of determining whether a plaintiff has "nudged [his] claims ... across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. at 679–80.

### B. Eighth Amendment

**\*5** In accordance with the above standard, the following facts set forth in the Amended Complaint are taken as true. In July of 2010, Plaintiff was transferred to Mid–State from Clinton. Am. Compl. at ¶ 70. During his time at Mid–State, Plaintiff suffered from abdominal pains, high cholesterol, breathing problems, "opacified maxillary sinuses," separated shoulder, "olecranon bone spur on his right elbow" and left elbow, a wart on his finger, "fungus affecting his hands, feet, and crotch area."*Id.* at ¶¶ 72, 78, & 81. Plaintiff also suffered from "excruciating headaches." *Id.* at ¶ 75. Drs. Ramineni, Health Director at Mid–State, and Mannava, a doctor at Mid-state, provided Plaintiff with primary care during the relevant time period. *Id.* at ¶¶ 12–13.

At some point before Plaintiff began experiencing severe headaches, he woke up "confused, had vision problems and suffered slowness of gait."*See id.* at ¶ 75. Plaintiff complained of twitching and numbness on his left side, for which Dr. Ramineni conducted an EMG exam. *Id.* at ¶ 75. Thereafter, Plaintiff continued to complain to Dr. Ramineni about the "severe pains in his head ... for over four months" but Dr. Ramineni did "nothing to address the severe pains in his head"

because Dr. Ramineni concluded that Plaintiff's complaints were "imaginary." *Id.* at ¶¶ 75–76.

Plaintiff was subsequently reassigned to Dr. Mannava for medical care and Defendant Lozier [5] sat in on Plaintiff's first meeting with Dr. Mannava. *Id.* at ¶ 77. "Plaintiff signed a HIPPA release form for DSA Lozier."*Id.* During that meeting, Dr. Mannava stated that Plaintiff "was afflicted with a fungus," but when Plaintiff informed him that the New York State Department of Corrections and Community Supervision ("DOCCS") had a provision that required the facility doctors to provide treatment for fungus Dr. Mannava "changed his diagnosis to one that didn't require treatment."*Id.* at ¶ 78. Dr. Mannava stated that he would prescribe "fungus pills, which he did not do."*Id.* Plaintiff was sent to a dermatologist who confirmed that he had a fungus infection and recommended "the needed pills." *Id.* at ¶ 98. However, the dermatologist's prescription was not approved. *Id.* Plaintiff claims he has not received any treatment for his fungus infection which "has removed his toe nails, [he] pick[s] pieces of toe nails out bit by bit, while bleeding and painful, and has affected his entire right hand ... consum[ed] a fingernail ... and it has reached the point where it has spread to consume his entire right hand[.]"*Id.*The fungus has peeled the "skin off his hand." *Id.*

In response to Plaintiff's complaint of "severe and excruciating headaches," Dr. Mannava stated that he first wanted to wait on the EMG test results. *Id.* at ¶ 79. Despite Plaintiff's daily complaints concerning head pains "and throbbing in his left ear," Drs. Mannava and Ramineni concluded that "plaintiff's headaches are not real" and, ultimately did not provide Plaintiff with any treatment for his headaches. *Id.* at ¶¶ 80 & 82. As a result, "he is subjected to waves of pain and twinges to pain all day and night in his head and is left holding his head in his hands for most of each day[.]"*Id.* at ¶ 104.

**\*6** To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs."*Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)."[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.1992), *aff'd,*970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical

condition and (2) deliberate indifference. *Farmer v. Brennan,* 511 U.S. 825, 834–35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hathaway v. Coughlin ("Hathaway I"),* 37 F.3d 63, 66 (2d Cir.1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals' daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Hathaway I,* 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan,* 511 U.S. at 836. This requires "something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) (citing *Farmer* ). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II"),* 99 F.3d 550, 553 (2d Cir.1996)); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citations omitted).

### 1. Serious Medical Need

Here, Plaintiff alleges that he has foot fungus, which spread to his entire right hand. Am. Compl. at ¶ 98. Generally, foot fungus is not a "serious" medical condition. *Thompson v. Carlsen,* 2010 WL 3584409, at *6 (N.D.N.Y. Aug.16, 2010) (citing, *inter alia, Scott v. Laux,* 2008 WL 4371778, at *5 (N.D.N.Y. Sept.18, 2008), for the proposition that fungal infections do not warrant Eighth Amendment protection). However, the Court is reluctant at this juncture to find that a

fungus that appears to be spreading and causing the Plaintiff to bleed is not a serious medical condition. *Fox v. Brown,* 2007 WL 586724, at *8 (refusing to dismiss plaintiff's Eighth Amendment claim on a motion to dismiss "because it was impossible to say one way or another whether plaintiff's medical need was serious") (cited in *Thompson v. Carlsen,* 2010 WL 3584409, at *6).

**\*7** Likewise, at this stage, Plaintiff's allegation that he suffered from "severe and excruciating headaches" constitutes a serious medical condition.*Benjamin v. Kooi,* 2010 WL 985844, at *7 (N.D.N.Y. Feb.25, 2010) (citing, *inter alia, Peterson v. Miller,* 2007 WL 2071743, at *7 (N.D.N.Y. July 13, 2007)); *Peterson v. Miller,* 2007 WL 2071743, at *7) (noting that headaches depending on their severity, duration, and degree may constitute a serious medical need). Accordingly, the Court finds that Plaintiff has sufficiently alleged a serious medical condition.

### 2. Deliberate Indifference

Based upon the facts set forth in the Amended Complaint, the Court finds that Plaintiff has sufficiently demonstrated that Drs. Mannava and Ramineni acted with deliberate indifference towards his medical condition as they knew of his multitude of complaints regarding his headaches and fungal condition, and failed to provide him with any treatment or care.

### C. Personal Involvement

With respect to Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Lozier, Koeningsmann, LaValley, and Longerman, Defendants urge the Court to dismiss these Defendants for a lack of personal involvement. Defs.' Mem. of Law at p. 5. The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement."*Kinch v. Artuz,* 1997 WL 576038, at *2 (S.D.N.Y. Sept.15, 1997) (citing *Colon v. Coughlin,* 58 F.3d 865, 874 (2d Cir.1995) & *Wright v. Smith,* 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal,* 556 U.S. at 676.

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; (4) was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d at 873 (citations omitted);[6] *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."*Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)); *see also Wright v. Smith,* 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

### *1. Lozier*

**\*8** According to Plaintiff, Mid–State Superintendent Lozier acted with deliberate indifference towards his medical needs. However, Defendant Lozier merely sat in during Plaintiff's first meeting with Dr. Mannava, who was providing Plaintiff with primary care. To the extent that Plaintiff is seeking to hold Defendant Lozier directly liable for inadequate care, it is clear that Lozier was not responsible for his day-to-day medical care. To the extent Plaintiff is seeking to hold Lozier liable under a theory of supervisory liability, there are no facts indicating that Lozier was notified or aware of an ongoing violation of Plaintiff's constitutional rights. *Burton v. Lynch,* 664 F.Supp.2d 349, 363 (S.D.N.Y.2009). Nor are there any facts pled establishing any other basis to find Defendant Lozier liable for any constitutional wrongdoing. Thus, the Court recommends **dismissing** Defendant Lozier from this action.

### *2. Koeningsmann*

Plaintiff's description of Koeningsmann's involvement in his medical care is grounded in legal conclusions. For instance, Plaintiff alleges that Dr. Koeningsmann was aware of his complaints regarding Mid–State's inadequate medical care services because "several attorneys put him on notice ... [but] has taken no steps to ensure that plaintiff receives the so obviously needed exams ... even at the risk of plaintiff becoming paralyzed or dead[.]" Am. Compl. at ¶ 90. He also alleges that Defendant Koeningsmann was "personally involved in plaintiff's health care (or lack of) and ... disregard[ed] an excessive risk to plaintiff's health and safety by failing to refer him for diagnostic testing[.]"*Id.* at ¶ 91. Because there is no indica of personal involvement, the Court recommends **dismissing** Plaintiff's Eighth Amendment claim against Koeningsmann.

### *3. LaValley*

Plaintiff claims that he was assaulted on May 27, 2010 and June 13, 2010 by Clinton correctional officers. Am. Compl. at ¶ 62. Plaintiff appears to claim that Superintendent LaValley is liable for those assaults.[7] *Id.* at ¶¶ 62–65. To be sure, the bulk of Plaintiff's allegations are legal conclusions and based on pure speculation. For instance, Plaintiff claims that Superintendent LaValley "was aware of the unconstitutional assaults and abuses" because Prison Legal Services "put Mr. LaValley on notice, as did other inmate's families. The letters were passed down to Sgt. Durkin to investigate [.]"*Id.* at ¶ 56. But yet, LaValley "failed to remedy the wrong." *Id.* Plaintiff then speculates that LaValley "allowed the policy and custom of abuse to continue," and "was grossly negligent in managing his subordinates who caused the unconstitutional conditions and events."*Id.* at ¶ 59. Such allegations fail to show his personal involvement. Furthermore, the fact that LaValley referred letters of complaints to staff for further investigation is insufficient to establish his personal involvement in any wrongdoing. *Vegas v. Artus,* 610 F.Supp.2d 185, 198–99 n. 13 (N.D.N.Y.2009) ("Prison supervisors are entitled to refer letters of complaint to subordinates, and rely on those subordinates to conduct an appropriate investigation and response, without rendering the supervisors personally involved in the constitutional violations alleged in the letters of complaint."). Thus, the Court recommends **dismissing** LaValley from this action.

### 4. Longerman

**\*9** Plaintiff claims that Defendant Longerman[8] "proximately caused" the May 27th and June 13th assaults because he failed to "correct the known pattern of abuse[.]" Am. Compl. at ¶ 65. However, Plaintiff also states that Longerman "from the IG's Office visited and interviewed plaintiff on or about 6–30–10."*Id.* at ¶ 50(b).[9] Because Longerman's involvement took place almost two weeks after the June 13th assault, Longerman lacks sufficient personal involvement in the alleged assaults. To the extent Plaintiff may be contending that Longerman conducted an inadequate investigation after he was assaulted, "there is 'no instance where the courts have recognized [an] inadequate investigation as sufficient to state a civil rights claim [.]' " *Phelan v. Chin,* 2013 WL 4495796, at *5 (W.D.N.Y. Aug.19, 2013) (citations omitted). Thus, the Court recommends **dismissing** Longerman from this action.

### D. Eleventh Amendment

Defendants raise Eleventh Amendment sovereign immunity as a defense to all of Plaintiff's § 1983 causes of action alleged against them in their official capacity. Defs.' Mem. of Law at p. 17. The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens.*Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)."The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.' " *Richardson v. New York State Dep't of Corr. Servs.,* 180 F.3d 426, 447–48 (2d Cir.1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. at 98101; *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993); *Daisernia v. State of New York,* 582 F.Supp. 792, 796 (N.D.N.Y.1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is

deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.,* 915 F.Supp. 525, 539 (N.D.N.Y.1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,*510 U.S. 1073, 114 S.Ct. 883, 127 L.Ed.2d 78 (1994) & *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993)); *see also Mathie v. Fries,* 121 F.3d 808, 818 (2d Cir.1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer....").

**\*10** However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court."*Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.,* 915 F.Supp. at 540. Nonetheless, where a prisoner has been released from prison, his claims for injunctive relief based on the conditions of his confinement must be dismissed as moot.*Hallett v. New York State Dep't of Corr. Servs.,* 109 F.Supp.2d 190, 196 (S.D.N.Y.2000).

Here, Plaintiff is asserting § 1983 claims against the Defendants in both their individual and official capacities. Am. Compl. at ¶¶ 1–16. Plaintiff is seeking compensatory monetary relief, as well as declaratory and injunctive relief. *Id.* at ¶ 1. The Court agrees that the Eleventh Amendment bars Plaintiff from seeking monetary damages from Defendants in their official capacity.*Berman Enterprises, Inc. v. Jorling,* 3 F.3d at 606 (affirming that a § 1983 suit seeking damages from defendants in their official capacity is properly dismiss under the Eleventh Amendment). And, notwithstanding Plaintiff's request for injunctive relief, in light of his release from prison, his claims for damages are limited to monetary damages, which he may only seek from Defendants in their individual capacities. Accordingly, Defendants' request for Eleventh Amendment Immunity should be **granted.**However, Plaintiff is not barred from seeking monetary damages against the Defendants in their individual capacities.

### E. Title II of the ADA & Rehabilitation Act

"Plaintiff has been diagnosed with Dysthymic Disorder [ ]; Polysubstance Abuse Disorder; Borderline Personality Disorder; and Anti–Social Personality Disorder."Am. Compl. at ¶ 106. As a result of his mental condition, Plaintiff suffers from "depressive slumps," and has "feelings of helplessness and worthlessness." *Id.* at ¶ 107. His conditions "make work and socializing almost impossible," and he "tend[s] to be emotionally unstable."*Id.* at ¶ 108. Plaintiff claims that he was assaulted on May 27th and June 13th because of his mental health disability; though he simultaneously claims that he was subjected to "beatings" on those days in retaliation "for constitutionally protected speech." *Id.* at ¶¶ 62, 67, & 109.

The May 27th assault occurred after Defendant Devereaux pricked his finger on a pencil found in Plaintiff's pocket. *Id.* at ¶ 18. During that assault, "sergeant, John Doe # 4" stated that Plaintiff was "lucky he was not in a [local hospital] because he stabbed an officer."*Id.* at ¶ 25. He claims that he was denied medical care because the doctors concluded that his medical conditions were " 'in [his] head' or 'not real' and in [his] 'imagination' " and that "is an exclusion of service ... and said denial was and is based solely on [his] mental disabilities." *Id.* at ¶ 126. Plaintiff further states he was denied medical services when he was escorted to the medical department by one or more of the Defendants that assaulted him, and they threatened him with "physical harm" if he informed the medical staff about the assault. Supp. Aff. at p. 3.

 **\*11** Plaintiff also claims that he was "denied access to Clinton's Grievance Program" as none of his complaints concerning assault and harassment were processed. *Id.* Yet, he claims to have "properly exhausted his administrative remedies with respect" to those complaints. Am. Compl. at ¶ 69. Plaintiff additionally claims he was excluded from "the ability to leave his cell and to use a phone in the prison yard as he was under threat of imminent harm by Defendant Durkin.... Plaintiff was not even able to get commissary and this service was denied to him."Supp. Aff. at p. 3.

The Anti–Discrimination provision of Title II of the ADA, states in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."42 U.S.C. § 12132. Likewise, Section 504 of the Rehabilitation Act provides that

"[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"29 U.S.C. § 794(a). To bring a claim under Title II of the ADA, a plaintiff must establish that (1) he is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his disability; and (3) the entity providing the service is a public entity. *Farid v. Demars,* 2009 WL 455450, at *4 (N.D.N.Y. Feb.23, 2009) (citation omitted).

Similarly, to state a *prima facie* claim for relief under the Rehabilitation Act, a plaintiff must establish that: (1) the entity denying participation or enjoyment receives federal financial assistance; (2) he is a "handicapped person" as defined in the Act; (3) he is "otherwise qualified" to participate in the offered activity or program or to enjoy the services or benefits offered; and (4) he is being excluded from participation or enjoyment solely by reason of his handicap. *See Rothschild v. Grottenthaler,* 907 F.2d 286, 289–90 (2d Cir.1990)."The main difference between the statutes is that coverage under [the] Rehabilitation Act is limited to entities receiving federal financial assistance, while ADA's reach extends to private entities. When brought together, claims under Title II and Section 504 may be treated identically."*Hilton v. Wright,* 928 F.Supp.2d 530, 556–57 (N.D.N.Y.2013) (citing *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d. Cir.2003)).

#### *1. Qualifying Disability*

Under the ADA, the term "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual."42 U.S.C. § 12102. A physical or mental impairment can be "[a]ny mental or psychological disorder, such as an intellectual disability ... [or an] emotional or mental illness[.]"29 C.F.R. § 1630.2(h) (2); *Skinner v. City of Amsterdam,* 824 F.Supp.2d 317, 326 (N.D.N.Y.2010) (citing to 29 C.F.R. § 1630.2(h) and further discussing the scope of disability within the ADA)."[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending speaking, learning, reading, concentrating, thinking, communicating, and working."42 U.S.C. § 12102.

**\*12** Here, Plaintiff has been diagnosed with Dysthymic Disorder, Polysubstance Abuse Disorder, Borderline Personality Disorder, and Anti–Social Personality Disorder. As a result of his mental illness, he suffers from feelings of "helplessness and worthlessness," and is "emotionally unstable." Am. Compl. at ¶ 107. Plaintiff's mental illness affects his major life activities, such as working and socializing. *Id.* at ¶ 121. At this stage, Plaintiff may have pled a sufficient qualifying disability. However, Plaintiff fails to adequately allege that he was excluded from programs and services due to his disability. For one, Plaintiff's assertion that he met with Drs. Ramineni and Mannava contradicts his vague allegation that he was excluded from receiving medical services at Mid–State. Likewise, Plaintiff fails to show that he was excluded from receiving medical services at Clinton. The fact that several Clinton Defendants threatened him with physical harm if he alerted the Clinton medical staff that they assaulted him, does not demonstrate an exclusion from medical care. In any event, Plaintiff does not allege that he was excluded from obtaining medical services due to discrimination.

Plaintiff also claims that he was excluded from Clinton's Grievance Program, while simultaneously claiming that he "properly exhausted his administrative remedies" concerning the assaults, harassment, and the threats of physical harm he faced during his time at Clinton. *Id.* at ¶ 69; *see generally id.* at ¶¶ 17–68. As a result, Plaintiff demonstrates that he was not excluded from Clinton's Grievance Program.

Plaintiff additionally claims that he did not have "the ability to leave his cell and to use a phone in the prison yard as he was under threat of imminent harm by Defendant Durkin."Supp. Aff. at p. 3. However, this allegation is devoid of any facts suggesting that his inability to do so relates to a program or service, and he also fails to allege that he was prevented from doing so because of his mental health condition.

Lastly, Plaintiff states he was unable "to get commissary" (*id.*), but there are no facts indicating how Plaintiff was excluded from commissary, or whether that exclusion was due to his disability. Thus, Plaintiff has failed to state a cause of action under the ADA and the Rehabilitation Act and the Court recommends **dismissing** these claims. [10]

## II. MOTION TO AMEND

Plaintiff seeks leave to file an amended complaint because he has learned the identity of John Doe # 4, and "felt it necessary to expound on his complaint ... [and] properly name parties" that were not previously named in this action. Dkt. No. 92, Pl.'s Mot. to Am. Plaintiff's Proposed Amended Complaint seeks to add: (1) four additional defendants; (2) the identity of John Doe # 4; (2) allegations in support of the original Eighth Amendment inadequate medical care claim; and (3) facts to support the original ADA and Rehabilitation Act claims. *See generally* Dkt. No. 92–1, Proposed Am. Compl.

### A. Standard of Review

**\*13** FED. R. CIV. P. 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires."*Tocker v. Philip Morris Co., Inc.,* 470 F.3d 481, 491 (2d Cir.2006); *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir.2003); *Manson v. Stacescu,* 11 F.3d 1127, 1133 (2d Cir.1993). Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Kropelnicki v. Siegel,* 290 F.3d 118, 130 (2d Cir.2002) (citing *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 271–72 (2d Cir.1996)). District courts are vested with broad discretion to grant a party leave to amend the pleadings. *SCS Commc'n, Inc. v. Herrick Co., Inc.,* 360 F.3d 329, 345 (2d Cir.2004) (citing *Foman v. Davis,* 371 U.S. at 182, for the proposition that an "outright refusal to grant the leave without any justifying reason ... is not an exercise of discretion [but] ... merely [an] abuse of that discretion and inconsistent with the spirit of the Federal Rules"); *see also Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel,* 145 F.3d 85, 89 (2d Cir.1998)."The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial."*Media Alliance, Inc. v. Mirch,* 2010 WL 2557450, at \*2 (N.D.N.Y. June 24, 2010) (quoting *New York v. Panex Indus., Inc.,* 1997 WL 128369, at \*2 (W.D.N.Y. Mar.14, 1997)); *see also Lamont v. Frank Soup Bowl,* 2000 WL 1877043, at \*2 (S.D.N.Y. Dec.27, 2000) (citations omitted). This requires the non-movant to "do more than simply claim to be prejudiced."*Breyette v. Amedore,* 205 F.R.D. 416, 417 (N.D.N.Y.2002) (quoting *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.,* 776 F.Supp. 181, 185 (E.D.Pa.1991)).

## B. Joinder of a Party

As noted above, Rule 15(a) of the Federal Rules of Civil Procedure generally governs the amendment of complaints, but in the case of proposed amendments where new defendants are to be added, the Court must also look to Rules 20 and 21. *Ward v. LeClaire,* 2008 WL 182206, at *3 (N.D.N.Y. Sept.26, 2007) (citing *United States v. Chilstead Building Co.,* No. 96–CV–0641 (N.D.N.Y. Nov. 7, 1997) (McAvoy, C.J.) (citations omitted)). Rule 21 states that a party may be added to an action "at any time [and] on just terms."FED. R. CIV. P. 21.[11] Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable."*Goston v. Potter,* 2010 WL 4774238, at *5 (N.D.N.Y. Sept.21, 2010) (quoting *United States v. Commercial Bank of North America,* 31 F.R.D. 133, 135 (S.D.N.Y.1962) (internal quotations marks omitted)). The addition of parties under Rule 21 is guided by the same liberal standard as a motion to amend under Rule 15. *See Ward v. LeClaire,* 2008 WL 182206, at *3; *Varela v. Cnty. of Rensselaer,* 2012 WL 1355212, at *7 (N.D.N.Y. Apr.18, 2012) (quoting *Fair Housing Dev. Fund Corp. v. Burke,* 55 F.R.D. 414, 419 (E.D.N.Y.1972)).

## C. Application

### 1. Futility

**\*14** As previously mentioned, leave to amend can be denied when there is undue delay, bad faith, undue prejudice to the non-movant, or futility of the amendments. The Second Circuit has stated that where futility is raised as an objection to the motion to amend, and

> [w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend. *See, e.g., Foman v. Davis,* 371 U.S. at 182, 83 S .Ct. at 230 (denial not abuse of discretion where amendment would be futile); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("where ... there is no merit in the proposed amendments, leave to amend should be denied"); *Billard v. Rockwell International Corp.,* 683 F.2d 51, 57 (2d Cir.1982) (denial not abuse of discretion

where plaintiff had had "access to full discovery" in a related case).

*Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993).

Where futility, as here, is the basis in opposing a motion to amend, the appropriate review standard is a motion to dismiss pursuant to Rule 12(b)(6).*See supra* Part I.A.

### a. Joinder of Additional Parties

Plaintiff seeks to join the following parties to the litigation: Dale Artus, Superintendent of Clinton; Brian Fisher, DOCCS Commissioner; DOCCS, "the entity"; and Mr. Smith, Superintendent of Mid–Sate. Proposed Am. Compl. at ¶¶ 10, 14–15, & 20. However, the Proposed Amended Complaint fails to demonstrate that these additional parties have sufficient personal involvement with respect to Plaintiff's § 1983 causes of action.[12] The Proposed Amendment Complaint is replete with legal conclusions and vague assertions alleged against Artus, Fisher, and Smith. In numerous instances, Plaintiff simply alleges that the various parties created and perpetuated bad policy, failed to train and supervise subordinates, had the "authority 11–13. to change or address" the matter, were "made aware" of relevant facts, and "are all personally involved." Proposed Am. Compl. at ¶¶ 81, 83, 84,117–18, 155–57, & 19499. He also asserts, without any factual support, that he "frequently and excessively wrote" to the various parties and "spoke to [ ] Smith on several occasions concerning his need for medical care and none was given."*Id.* at ¶¶ 159 & 161. As a result, the Court denies Plaintiff's request to join Artus, Fischer, and Smith to this action as it is futile.

The Court also denies Plaintiff's request to add DOCCS because Plaintiff's § 1983 claims is "clearly barred by the Eleventh Amendment because [DOCCS] is a state agency."*Feingold v. New York,* 366 F.3d 138, 149 (2d Cir.2004). In addition, because the Proposed Amended Complaint also fails to state a Title II ADA claim, it is futile to join DOCCS as a defendant in this action. *See infra* Part II.C.1.c.

The Proposed Amended Complaint also seeks to identify G. King, a Clinton Correctional Sergeant, as John Doe # 4. Proposed Am. Compl. at ¶ 8. Plaintiff claims that G. King was present when he was taken out of his cell and assaulted

on May 27, 2010 and, although not entirely clear from the proposed pleading, he may also have been "one of the sergeants" that directed him to face and grab the bars so that he may be assaulted by other correctional officers. Proposed Am. Compl. at ¶¶ 27–28. Other than generally raising futility, Defendants do not specifically object to Plaintiff identifying John Doe # 4 as one of the individuals who were personally involved in the May 27th assault. Thus, the Court **grants** Plaintiff's request to identify G. King as John Doe # 4. Plaintiff may only proceed against G. King in his individual capacity.

### b. Longerman, LaValley, Lozier, Koeningsmann

**\*15** The proposed allegations are similarly replete with legal conclusions and naked assertions against Defendants Longerman, LaValley, Lozier, and Koeningsmann. For instance, Plaintiff claims that Longerman was "aware of the systematic beatings occurring in the APPU," that "Superintendent LaValley knew of the increased suicides ... was made aware of such facts by plaintiff," and that Artus "was responsible for unconstitutional conditions." Proposed Am. Compl. at ¶¶ 72–76, 7884, & 88. Plaintiff adds that he "frequently and excessively wrote to" Lozier asking him to "address the medical care deficiencies that were systemic in the unit," and that he "frequently spoke to Lozier concerning his medical needs not being addressed[.]" Proposed Am. Compl. at ¶¶ 159–60. These allegations are vague and devoid of any factual content. As a result, the Court **denies** Plaintiff's request to add additional facts pertaining to Longerman, LaValley, Lozier, and Koeningsmann.

### c. Title II of the ADA and Rehabilitation Act

The Proposed Amended Complaint fails to establish a Title II ADA [13] claim for the very same reason Plaintiff failed to state an ADA claim in the operative pleading: Plaintiff's allegations do not demonstrate that he was excluded from participating in programs or services due to his disability. According to the Proposed Amended Complaint, he was denied "adequate medical care" because of the doctors' "discriminatory belief" that his medical condition was "not real," and he was threatened with physical harm. Proposed Am. Compl. at ¶¶ 189 & 190–91. He also claims, without providing any factual context, that he was not allowed to use the telephone, prevented from going to "commissary and recreation," and "denied proper utilization of the Inmate

Grievance Program." *Id.* at ¶¶ 190 & 194. [14] Thus, the Court **denies** Plaintiff's request to add allegations in support of his ADA and Rehabilitation Act claims as it would be futile.

### d. Deliberate Indifference

As previously discussed in *supra* Part I.D, the operative pleading states an Eighth Amendment cause of action for inadequate medical care. The Proposed Amended Complaint expands and embellishes this claim. Proposed Am. Compl. at ¶¶ 99, 134–40, 145, 147, 150, & 153. The Court notes that there is a thread of recent cases that find it unnecessary, even futile, to plead or replead additional facts to the existing and surviving claims for the sole purpose of expounding. *S.E.C. v. Yorkville Advisors, LLC,* 2013 WL 5350658, at \*1 (S.D.N.Y. Sept.20, 2013) (noting that the original complaint already contained sufficient allegations to state a claim and the proposed amendments were thus unnecessary to state a claim for relief); *Rahman v. Fischer,* 2012 WL 3392010, at \*13 (N.D.N.Y. Sept. 28, 2012) (advising that where the substantive allegations already appear clearly in the complaint and there is no discernible nexus between the alleged events, the amendments would be futile); *Vann v. Fischer,* 2010 WL 2889538, at \*2 (W.D.N.Y. July 21, 2010) (finding that "the additional allegations merely reiterate and embroider the claims ..., adding little, if anything, of substance to the case"). This Court shares the same sentiment that adornments, embroidering, embellishments, and aggrandizements within a complaint are unnecessary; they just clutter and confound all that is required for a well-pled pleading, and amount to being superfluous. Though sufficient facts must be pled, the Court holds the view that it is bad form to include every known fact that consequently nudges a clear and concise pleading into the realm of becoming unabridged. *Iqbal* does not require that all known facts be pled, just sufficient facts to plausibly state a cause of action.

**\*16** However, because the Plaintiff is proceeding *pro se,* the Court will **grant** Plaintiff leave to add the proposed paragraphs [15] in support of his inadequate medical care claim. The Court does not find that such leave would be prejudicial to the Defendants because the new allegations involve claims that we recommend should survive the present dispositive motion, and discovery has not yet concluded. *Scott v. Chipotle Mexican Grill, Inc.,* 300 F.R.D. 193, 200 (S.D.N.Y.2014). In addition, discovery has been stayed since July 15, 2014. Dkt. No. 97, Order, dated July 15, 2014. Furthermore, the Court

is prepared to further extend the stay on discovery and direct Plaintiff to submit a proposed amended complaint to the Court in accordance with the directives herein, which the undersign will review to minimize, if any, the prejudicial effect on the Defendants.

### III. CONCLUSION

For the reasons stated herein, it is hereby **RECOMMENDED,** that Defendants' partial Motion for Judgment on the Pleadings (Dkt. No. 86) be **GRANTED IN PART AND DENIED IN PART** as follows:

1) **DENIED** as to Plaintiff's Eighth Amendment claims for deliberate indifference to his serious medical needs;

2) **GRANTED** as to Plaintiff's ADA and Rehabilitation claims, which should be **DISMISSED WITH PREJUDICE;**

3) **GRANTED** as to Plaintiff's claims against the Defendants in their official capacities;

4. **GRANTED** as to claims pled against Defendants Lozier, Koeningsmann, LaValley, and Longerman, and these Defendants should be **DISMISSED** from this action; and it is further

**ORDERED,** that Plaintiff's Motion to Amend (Dkt. No. 92) is **GRANTED IN PART AND DENIED IN PART** as follows:

1) **GRANTED** to the limited extent Plaintiff seeks to identify G. King as John Doe # 4 and add additional facts in support of the Eighth Amendment medical indifference claim;

2) **DENIED** in all other respects; and it is further

**ORDERED,** that should the assigned District Judge accept the above recommendations, Plaintiff should be directed to submit for review a Proposed Amended Complaint that is consistent with the Court's directives; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also*28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

Filed March 3, 2015.

**All Citations**

Slip Copy, 2015 WL 1481769

Footnotes

1    In a Text Order dated March 13, 2015, the Court granted Plaintiff an extension until March 27, 2015 to file Objections to the Report–Recommendation. Dkt. No. 116. On March 23, 2015, Plaintiff filed a Letter Request asking for additional time to file Objections. Dkt. No. 117. In a Text Order dated March 24, 2015, the Court denied this request and ordered that if Plaintiff did not file objections to the Report–Recommendation by March 27, 2015, the Court would construe the arguments in his Letter Request as Objections. Dkt. No. 118. Plaintiff did not file subsequent objections. Consequently, the Court construes the arguments in Plaintiff's Letter Request, Dkt. No. 117, as timely filed Objections for the purposes of this Decision and Order.

1    The Second Circuit has held that due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he or she hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan,* 999 F.2d 679, 681–82 (2d Cir.1993), *modified on reh'g,*25 F.3d 81 (2d Cir.1994). It is presumed that a prisoner handed the pleading to the prison guard on the date he signed the complaint. *Shaw v. Superintendent Attica Corr. Fac.,* 2007 WL 951459, at *3 n. 3 (N.D.N.Y. Mar.28, 2007).

2    The Amended Complaint was filed as of right pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

3    On September 13, 2013, the Honorable Lawrence E. Kahn, Senior United States District Judge, issued a Decision and Order directing that Plaintiff's Motion for Reconsideration be considered a Supplemental Affidavit in support of Plaintiff's Amended Complaint; thus, effectively rendering it a part of the operative pleading. Dkt. No. 42.

4    Defendants are not moving to dismiss Plaintiff's First Amendment retaliation claim nor his Eighth Amendment excessive force claim against Defendants Durkin, Mitchell, Devereux, and John Does # 1–5. *See* Dkt. No. 86–1. Defs.' Mem. of Law at pp. i & 1; *see generally* Dkt. No. 1, Am. Compl.

5    Defendant Lozier is the Deputy Superintendent of Administrative Services at Mid–State Correctional Facility, and is "responsible for overseeing and supervisi[ng] the medical care and services at Mid–State Correctional Facility."Am. Compl. at ¶ 14.

6    The Second Circuit has yet to address the impact of *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) upon the categories of supervisory liability under *Colon v. Coughlin,* 58 F.3d 865 (2d Cir.1995).*See Grullon v. City of NewHaven,* 720 F.3d 133 (2d Cir.2013) (noting that the Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement," but declining to resolve the issue). Lower courts have struggled with this issue, specifically whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See, e.g., Sash v. United States,* 674 F.Supp.2d 531, 543 (S.D.N.Y.2009). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see, e.g., Bellamy v. Mount Vernon Hosp.,* 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd,*387 F. App'x 55 (2d Cir.2010), others disagree and conclude that whether any of the five categories apply in any particular cases depends upon the particular violations alleged and the supervisor's participatory role, *see, e.g., D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010). Nevertheless, this Court, until instructed to the contrary, continues to apply the entirety of the five factor *Colon* test.

7    LaValley "is the Superintendent of Clinton Correctional Facility and is in charge of 'the supervision and discipline of all correctional staff at [ ] Clinton[.]' Am. Compl. at ¶ 11.

8    "Longerman[ ] is employed by [ ]DOCCS Central Office as an Inspector General and was responsible for investigating claims of guard abuses at the Clinton Correctional Facility."Am. Compl. at ¶ 10.

9    The Amended Complaint contains two paragraphs designated as number "50." The Court will distinguish each paragraph as "50(a)" and "50(b)."

10    Defendants have raised sovereign immunity as a defense to Plaintiff's ADA claim. However, we need not consider whether sovereign immunity was abrogated because Plaintiff fails to state a Title II ADA claim. *Mary Jo C. v. New York State & Local Ret. Sys.,* 707 F.3d 144, 152 (2d Cir.2013).

11    "Rule 21 cannot be read alone but must be read in the light of Rules 18, 19 and 20[.]"*United States v. Commercial Bank of North America,* 31 F.R.D. 133, 135 (S.D.N.Y.1962). In this respect, the federal rules state, in part, that "[p]ersons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. FED. R. CIV. P. 20(a)(2).Rule 20(a)(2) is liberally construed "so as to promote judicial economy and to allow related claims to be tried within a single proceeding."*Equal Emp't Opportunity Comm'n v. Nichols Gas & Oil, Inc.,* 518 F.Supp.2d 505, 508–09 (W.D.N.Y.2007) (citing, *inter alia, Barr Rubber Prods. Co. v. Sun Rubber Co.,* 425 F.2d 1114, 1127 (2d Cir.1970)).

12    *See infra* Part I.C pp.

13    Title II of the ADA and Rehabilitation Act legal standard can be found at *supra* Part I.E.

14    The Proposed Amended Complaint contains two paragraphs designated as "194." The Court cites to the first paragraph designated as "194."

15    Proposed paragraphs designated as 99, 108, 132–40, 145–54, 158, 163 relate to Plaintiff's deliberate indifference claim.

---

**End of Document**    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 9482895
Only the Westlaw citation is currently available.
United States District Court,
D. Connecticut.

Jason Day, Plaintiff,

v.

Colleen Gallagher, et al., Defendants.

No. 3:15–cv–001574 (JAM)
|
Signed December 21, 2015

**Synopsis**

**Background:** State inmate brought § 1983 action against
prison officials, seeking injunctive relief and monetary
damages for officials' alleged deliberate indifference to
his safety and medical needs in violation of the Eighth
Amendment. Pursuant to Prison Litigation Reform Act
( PLRA), the District Court conducted initial review of
prisoner's complaint.

**Holdings:** The District Court, Jeffrey Alker Meyer, J., held
that:

[1] inmate stated plausible claim of deliberate indifference
against prison officials, and

[2] Eleventh Amendment barred claim against officials in
their official capacities for monetary relief, but not for
injunctive relief.

Ordered accordingly.

West Headnotes (2)

[1]    **Prisons**
       🔑 Hazardous and unhealthful conditions;
       housing

       **Prisons**
       🔑 Particular Conditions and Treatments

       **Sentencing and Punishment**
       🔑 Sanitation

       **Sentencing and Punishment**
       🔑 Medical care and treatment

       State inmate's allegations that prison officials
       refused to provide him with shower shoes that fit
       his feet so that he could walk through overflow
       from unit toilet in order to reach showers in
       his housing unit without being exposed to risk
       of infection through open wounds in his feet
       and legs, were sufficient to state plausible claim
       under § 1983 of deliberate indifference to safety
       and medical needs in violation of the Eighth
       Amendment, against officials in their individual
       and official capacities. U.S.C.A. Const.Amend.
       8; 42 U.S.C.A. § 1983.

       Cases that cite this headnote

[2]    **Federal Courts**
       🔑 Suits for injunctive or other prospective or
       equitable relief;  Ex parte Young doctrine

       **Federal Courts**
       🔑 Prisons and jails

       Where state inmate brought § 1983 action
       against prison officials, seeking injunctive and
       declaratory relief and monetary damages, based
       on officials' deliberate indifference to safety and
       medical needs for failure to provide inmate with
       shower shoes in order to avoid risk of infection
       through open wounds in his feet and legs, the
       Eleventh Amendment would bar inmate's claims
       only insofar as he sought monetary damages
       from officials in their official capacities, but
       would not bar claim for injunctive relief against
       officials in their official capacities. U.S.C.A.
       Const.Amend. 11; 42 U.S.C.A. § 1983.

       Cases that cite this headnote

**INITIAL REVIEW ORDER AND
ORDER TO SHOW CAUSE**

Jeffrey Alker Meyer, United States District Judge

**\*1**  Plaintiff Jason Day is currently incarcerated at
MacDougall–Walker Correctional Institution. He has filed
a complaint under 42 U.S.C. § 1983 against Program

Director Colleen Gallagher, Dr. Fedus, Nurse Nikki, and Administrator Rikell Lightner. For the reasons set forth below, the complaint is dismissed in part. Plaintiff has also filed a motion for preliminary injunction (Doc. # 3), seeking an order directing the defendants to provide him with shower shoes that fit his feet. Defendants shall respond to this motion and address why the relief requested should not be granted.

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A complaint that includes only " 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009).

 [1]  Plaintiff alleges that he suffers from many medical conditions including chronic lower extremity lymphedema and cellulitis. These conditions cause swelling in his legs and ulcers or open wounds on his feet and legs. Possibly in part due to his condition, plaintiff has very large feet that require extra-large and wide shower shoes. He does not have shower shoes that fit his feet. In order to reach the shower in his housing unit, plaintiff must often walk barefoot through overflow from the unit toilet that is located in the shower area. The shower is also used by inmates who are disabled and have colostomy bags that are emptied near or in the shower. These conditions subject plaintiff to a great risk of infection in his feet and legs. Plaintiff alleges that the defendants have refused to provide him with shower shoes that fit his feet. Instead, they have told him to purchase the shoes in the commissary. Plaintiff, however, does not have a prison job or any other source of income and is unable to purchase the shoes.

 *2  [2]  Plaintiff seeks injunctive and declaratory relief and monetary damages. To the extent plaintiff seeks damages against the defendants in their official capacities, the claims are barred by the Eleventh Amendment. *See Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). All such official capacity claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(2). The Eleventh Amendment, however, does not bar plaintiff's claim for injunctive relief. *See Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

The Court concludes for now that the plaintiff's allegations otherwise may state plausible claims of deliberate indifference to safety and medical needs. *See Gonzalez v. Mullen,* 446 Fed.Appx. 17 (9th Cir.2011) (inmate's allegation that he was unable to obtain shower shoes and thereby put at risk of bacterial exposure found to be sufficient to state an Eighth Amendment claim); *but see Puranda v. Kellett,* 2011 WL 6742498, at *4 (E.D.Va. Dec. 22, 2011) ("Shower shoes are not a basic human need."). The case will proceed against the defendants in their individual and official capacities.

## ORDERS

The Court enters the following orders:

(1) The claims against all defendants in their official capacities for money damages are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The deliberate indifference to safety and medical needs claims will proceed against defendants Program Director Colleen Gallagher, Dr. Fedus, Nurse Nikki, and Administrator Rikell Lightner in their individual and official capacities.

(2) **Within twenty-one (21) days of this Order,** the U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on the defendants in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3) **Within twenty-one (21) days of this Order,** the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Program Director Colleen Gallagher, Dr. Fedus, Nurse Nikki and Administrator Rykell Lightner and mail a waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of all the requests. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) Defendants shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

(7) **The Clerk is directed to forward a copy of this order and the motion for injunctive relief (Doc. # 3) to Assistant Attorney Generals Terrence M. O'Neill and Madeline Melchionne. On or before January 11, 2016, defendants shall file a response to the motion showing cause why the relief requested should not be granted.**

**\*3** It is so ordered.

### All Citations

--- F.Supp.3d ----, 2015 WL 9482895

KeyCite Yellow Flag - Negative Treatment

Distinguished by Young v. Choinski, D.Conn., September 16, 2014

2011 WL 2975218
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Gotfried JEAN, Plaintiff,
v.
C.O. BARBER, Correctional Officer, Auburn
Correctional Facility; Sgt. Christopher, Auburn
Correctional Facility; and Superintendent Graham,
Auburn Correctional Facility, Defendants.

No. 9:09–cv–430 (MAD/GHL).
|
July 21, 2011.

**Attorneys and Law Firms**

Gotfried Jean, Malone, NY, pro se.

Office of the New York State Attorney General, Adrienne J.
Kerwin, AAG, of Counsel, Albany, NY, for defendants.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

## I. INTRODUCTION

**\*1** On April 10, 2009, plaintiff *pro se* filed the present
action, alleging that he was denied adequate medical care,
in violation of his Eighth and Fourteenth Amendment rights,
when defendants failed to provide him with mental health
services prior to a suicide attempt. *See* Dkt. No. 1. In a Report–
Recommendation and Order dated June 28, 2011, Magistrate
Judge Lowe recommended that the Court grant defendants'
motion for summary judgment and dismiss the complaint.
*See* Dkt. No. 52. [1]

Currently before the Court are plaintiff's objections
to Magistrate Judge Lowe's June 28, 2011 Report–
Recommendation and Order. [2]

## II. BACKGROUND

### A. Factual background

In his complaint, plaintiff alleges that his Eighth and
Fourteenth Amendment rights were violated during his
confinement at the Auburn Correctional Facility ("Auburn
C.F."). *See* Dkt. No. 1 at 4. Specifically, plaintiff alleges that,
on December 16, 2006, while in his cell, he told defendant
Barber that he wanted to commit suicide. *See id.* Plaintiff
alleges that he then saw defendant Christopher, who told him
that there was nothing wrong with him and that he should
"do [his] time like a man." *See id.* at 4–5. Thereafter, plaintiff
alleges that defendant Christopher told defendant Barber not
to call "any mental health staff." *See id.* One or two hours later,
plaintiff again told defendant Barber that he wanted to commit
suicide, but defendant Barber said nothing and walked away.
*See* Dkt. No. 39–3 at 10.

Later that day, plaintiff attempted to commit suicide by
"trying to sever [his] arm off with a can top." *See* Dkt. No. 1 at
5. Plaintiff cut his arm five times. *See* Dkt. No. 39–3 at 12. At
that point, a non-defendant officer arrived and took plaintiff
to receive medical attention. *See id.* at 13. Plaintiff was placed
in a cell in the Mental Health Unit ("MHU") at Auburn C.F.
and later spoke to a non-defendant individual from the Office
of Mental Health ("OMH"). *See id.* at 14. Thereafter, plaintiff
was released to the Special Housing Unit. *See id.* at 16.

In his complaint, plaintiff alleges that defendants acted with
deliberate indifference in violation of his Eighth Amendment
rights by leaving him in his cell after he threatened to commit
suicide. *See* Dkt. No. 1 at 5. Plaintiff claims that he saw
mental health personnel only after he injured himself. *See
id.* Moreover, plaintiff asserts that his suicide threat and his
self-inflicted wounds "are consistent with a serious medical
need."

On October 1, 2010, the remaining defendants moved
for summary judgment. *See* Dkt. No. 39. In their motion,
defendants argued that (1) plaintiff cannot prevail on his
Eighth Amendment claim because defendants were not
deliberately indifferent to plaintiff's serious medical needs;
and (2) they are entitled to qualified immunity as to each of
plaintiff's claims. *See* Dkt. No. 39–7 at 2–6.

### B. Magistrate Judge Lowe's Report–Recommendation
and Order

**\*2** In his Report–Recommendation and Order, Magistrate Judge Lowe found that it was unclear whether plaintiff experienced any previous suicidal thoughts. *See* Dkt. No. 52 at 6. Citing to his obligation to resolve all ambiguities and draw all reasonable inferences against the non-moving party, however, Magistrate Judge Lowe still recommended that the Court find that a question of fact has been raised as to whether plaintiff suffered from a sufficiently serious medical need. *See id.*

Regarding deliberate indifference, Magistrate Judge Lowe recommended that the Court find that "there is no indication that Defendants *intentionally* delayed access to medical care. Instead, the record shows that Defendants responded quickly to Plaintiff and took steps to assist him." *See id.* Specifically, Magistrate Judge Lowe set forth the following in support of his conclusion:

> When Plaintiff told Defendant Barber at approximately 7:00 a.m. that he wanted to commit suicide, Defendant Barber "immediately informed the first officer on the shift, who then informed [Defendant] Christopher." Barber Dec. at ¶ 5. The logbook entry confirms that Defendant Barber conveyed this information and that Defendant Christopher was notified at 7:10 a.m. Ex. F. Defendant Christopher saw Plaintiff at approximately 7:50 a.m. Christopher Dec. at ¶ 4. Defendant Barber continued to observe Plaintiff until the conclusion of his shift at 3:00 p.m. Barber Dec. at ¶ 8. Plaintiff cut his arm after Defendant Barber finished his shift. *Id.* at ¶ 7; Jean Dep. at 10.

*See id.* at 7.

Thereafter, Magistrate Judge Lowe recommended that the Court dismiss plaintiff's Fourteenth Amendment claim because it "overlaps" with the Eighth Amendment claims and, therefore, " 'will be subsumed by the Eighth Amendment claim as the Eighth Amendment offers greater protection to prisoners.' " *See id.* at 8 (quotation and other citation omitted). Finally, Magistrate Judge Lowe declined to reach the qualified immunity issue because plaintiff failed to establish any violations of his constitutional rights. *See id.* at 8–9.

## C. Plaintiff's objections to Magistrate Judge Lowe's Report–Recommendation and Order

In his objections to Magistrate Judge Lowe's Report–Recommendation and Order, plaintiff puts forth the following seven arguments:

1) Plaintiff objects to the Report and Recommendation that summary judgment be granted to the Defendants.

2) Plaintiff objects to the deliberate indifference decision rendered by the Judge. There are genuine issues of material fact which include but are not limited to the following:

> A) Defendants presented no proof whatsoever that mental health staff was notified.

> B) Defendant Barber agrees that Plaintiff notified him on more than one occasion of his suicidal thoughts and need for assistance.

3) Defendant Barber failed to notify mental health staff as is the policy of DOCS.

4) Defendant Barber made numerous false and contradictory statements as to the monitoring of the Plaintiff. *See* Affidavit in Opp. of Def. Summary Judgment Motion).

**\*3** 5) Defendant Barber left the Plaintiff in his cell. There is no suicide log book. No monitoring of Plaintiff as per DOCS Directive No. 4101 Section 4A(1), (2), (3), (4).

6) Defendant Sgt. Christopher never reported Plaintiff or referred Plaintiff to mental health.

7) The inference was drawn by the Def. Barber (*see* Exhibits I4 Mem. of Law).

*See* Dkt. No. 53 at 2–3. Moreover, plaintiff asserts that he was never taken to a common area for supervision or suicide watch, even after he made defendants aware of his suicidal thoughts. *See id.* at 3. As such, plaintiff asserts that there are questions of material fact precluding summary judgment. *See id.*

## III. DISCUSSION

### A. Standard of review

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations

for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."28 U.S.C. § 636(b) (1). [3]

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir.1994) (citations omitted). When analyzing a summary judgment motion, the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett,* 477 U .S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers,* 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.,* 322 F.3d 139, 143 n. 5 (2d Cir.2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

 **\*4** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y.2007) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)) (other citations omitted). "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995) (citing *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991)).

## B. Deliberate indifference to a serious medical need

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This includes the provision of medical care and punishments involving "the unnecessary and wanton infliction of pain."*Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citations omitted). A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need. *See Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Hathaway,* 37 F.3d at 66. More than negligence is required "but less than conduct undertaken for the very purpose of causing harm."*Hathaway,* 37 F.3d at 66.

The test for a § 1983 claim is twofold. First, the prisoner must show that there was a sufficiently serious medical need. *See Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. *See id.*"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."*Farmer v. Brennan,* 511 U.S. 825, 844 (1994).

" 'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) (quotation omitted). Since there is no distinct litmus test, whether a medical condition is serious depends on certain factors, such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."*Brock v. Wright,* 315 F.3d 158, 162–63 (2d Cir.2003) (citing *Chance,* 143 F.3d at 702). The court should also judge the severity of the denial of care within the context of the surrounding facts and circumstances of the case. *See Smith,* 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."*Chance,* 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."*Estelle v. Gamble,* 429 U.S. 97, 104, (1976)."Mere disagreement over proper treatment does

not create a constitutional claim," as long as the treatment was adequate. *Id* . at 703.Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

### 1. Objective prong

**\*5** Plaintiff did not object to, nor does the Court find error with, Magistrate Judge Lowe's determination that plaintiff has satisfied the objective prong of his Eighth Amendment challenge. *See Hamilton v. Smith,* No. 9:06–cv–805, 2009 WL 3199531, \*14 (N.D.N.Y. Jan. 13, 2003) (citing *Guglielmoni v. Alexander,* 583 F.Supp. 821, 826 (D.Conn.1984)); *see also Loadholt v. Lape,* No. 9:09–CV–658, 2011 WL 1135934, \* 3 (N.D.N.Y. Mar. 3, 2011) (citing cases).

### 2. Subjective prong

Although plaintiff met his burden with respect to the objective prong of his Eighth Amendment claim, the Court finds that Magistrate Judge Lowe correctly determined that there is no genuine issue of material fact showing that defendants were deliberately indifferent to plaintiff's serious medical need.

Non-medical personnel may engage in deliberate indifference if they intentionally deny or delay access to medical care. *See Zimmerman v. Burge,* No. 9:06–cv–176, 2009 WL 3111429, \*8 (N.D.N.Y. Sept. 24, 2009) (citation omitted); *see also Baumann v. Walsh,* 36 F.Supp.2d 508, 512 (N.D.N.Y.1999) (citations omitted)."Courts which have considered the issue have ruled that in the context of suicide, jailers are not required to safeguard every inmate; only those presenting a 'strong likelihood of suicide' are entitled to protection."*Burke v. Warren County Sheriff's Dept.,* No. 90–CV–597, 1994 WL 6755042, \*6 (citing *Schmelz v. Monroe County,* 954 F.2d 1540, 1545 (11th Cir.1992); *Colburn v. Upper Darby,* 946 F.2d 1017, 1024 (3d Cir.1991) (*Colburn II* ); *Bell v. Stigers,* 937 F.2d 1340, 1343 (8th Cir.1991); *Torraco v. Maloney,* 923 F.2d 231, 236 (1st Cir.1991); *Edwards v. Gilbert,* 867 F.2d 1271, 1276 (11th Cir.1989); *Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir.1988))."In order to establish a strong likelihood of suicide, a detainee must have made a previous threat or an earlier attempt at suicide."*Id.* (citing *Elliott v. Cheshire County,* 940 F.2d 7, 11 (1st Cir.1991) ("In the absence of a previous threat or an earlier attempt at suicide, we know of no federal court in the nation that has concluded that failing to prevent a suicide constitutes deliberate indifference"); *Bufington v. Baltimore County,* 913 F .2d 113, 119 (4th Cir.1990) (holding that liability could not be premised on the officers' failure to act on a speculative suicide risk); *Rellergert v. Cape Girardeau County,* 724 F.Supp. 662, 666 (E.D.Mo.1989) ("Obviously, in the absence of a previous threat or an earlier attempt at suicide, official misconduct in failing to prevent a suicide does not constitute deliberate indifference")).

In the present matter, the record does not indicate that plaintiff made any previous suicide threats. Moreover, the record makes clear that defendants promptly responded to plaintiff's suicide threat, and that defendant Barber continued to observe plaintiff until the conclusion of his shift at 3:00 p.m. *See*Dkt. No. 39–4 at ¶ 8. Further, defendant Christopher stated that, when he interviewed plaintiff at 7:50 a.m., plaintiff indicated that he had no intention of harming himself. *See*Dkt. No. 39–5 at ¶ 5. Thereafter, defendant Christopher notified mental health personnel of plaintiff's original suicide threat to defendant Barber and the fact that he also told defendant Christopher that he had no intention of harming himself. *See id.* at ¶ 6. Defendant Christopher finished his shift at 3:00 p.m. and had no other contact with plaintiff on the day in question. *See id.* at ¶ 7.

**\*6** Contrary to plaintiff's assertions, this conduct does not constitute deliberate indifference and is in compliance with DOCS' Directive regarding suicide prevention. *See*Dkt. No. 39–3 at 44.Specifically, the directive requires non-medical personnel to notify mental health staff of an inmate who may be a suicide risk. *See id.* at § IV(A). Once notified, mental health staff must respond with an evaluation **"within one business day."***See id.* at § IV(B). Although such an evaluation had not yet occurred, defendant Barber continued to monitor plaintiff, despite the fact that he informed defendant Christopher that he no longer intended to commit suicide.

As Magistrate Judge Lowe correctly concluded, viewing the facts in the light most favorable to plaintiff, defendants' conduct does not rise to the level of deliberate indifference. [4] *See Kelsey v. City of New York,* 306 Fed. Appx. 700, 703 (2d Cir.2009) (holding that, in the pretrial detainee context, "deliberate indifference [is] lacking where officers take affirmative and reasonable steps to protect detainees from suicide" (citations omitted)).

### C. Plaintiff's Fourteenth Amendment claim

Plaintiff did not object to Magistrate Judge Lowe's conclusion that, "[w]here, as here, a plaintiff's Eighth Amendment and Fourteenth Amendment due process claims ' "overlap," the due process claim will be subsumed by the Eighth Amendment claim as the Eighth Amendment offers greater protections to prisoners.' " *See* Dkt. No. 52 at 8 (quotations and other citation omitted).

The Court has reviewed this claim and finds that Magistrate Judge Lowe correctly determined that the claim should be dismissed. *See Felix–Torres v. Graham,* 521 F.Supp.2d 157, 164 (N.D.N.Y.2007) (quoting *Graham v. Connor,* 490 U.S. 386, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

### IV. CONCLUSION

After carefully considering Magistrate Judge Lowe's Report–Recommendation and Order, plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Lowe's June 28, 2011 Report–Recommendation and Order is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that defendants' motion for summary judgment is **GRANTED** and that plaintiff's complaint is **DISMISSED WITH PREJUDICE;** and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum–Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2975218

### Footnotes

1   By Order dated January 11, 2010, Judge David N. Hurd granted defendant Graham's motion to dismiss and dismissed him from the case. *See* Dkt. No. 20.

2   Plaintiff labeled his objections to Magistrate Judge Lowe's Report–Recommendation and Order as a "Notice of Appeal" and stated that he is hereby appealing Magistrate Judge Lowe's decision "to the United States Court of Appeal[s] for the Second Circuit." *See* Dkt. No. 53 at 1. Throughout the filing, however, plaintiff repeatedly states that he "objects to the Report and Recommendation" in general and then "objects" to specific findings made by Magistrate Judge Lowe. *See id.* at 2–3. In light of plaintiff's *pro se* status and the fact that "a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point," *Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (citation omitted), the Court will treat plaintiff's filing as timely filed objections to Magistrate Judge Lowe's June 28, 2011 Report–Recommendation and Order.

3   Despite the conclusory nature of most of plaintiff's objections, the Court will still person a *de novo* review.

4   Significantly, plaintiff's suicide attempt did not occur until after defendants were no longer on duty.

   © 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2016 Thomson Reuters. No claim to original U.S. Government Works.   5

Maccharulo v. New York State Dept. of Correctional Services, Not Reported in...

2010 WL 2899751

2010 WL 2899751
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Joy MACCHARULO et al., Plaintiffs,

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES et al., Defendants.

No. 08 Civ. 301(LTS).
|
July 21, 2010.

West KeySummary

**1**  **Civil Rights**
👉 Medical Care and Treatment

Contention that prison denied mentally ill prisoner access to level one services while in a level two facility failed under the ADA as it was a challenge to the adequacy of the mental health services received. Prisoner failed to allege disparate treatment as a result of mental illness. Further, prisoner was at all relevant times provided with mental health services in an effort to accommodate his particular mental health disability. Americans with Disabilities Act of 1990, § 2, 42 U.S.C.A. § 12101.

Cases that cite this headnote

*MEMORANDUM OPINION AND ORDER*

LAURA TAYLOR SWAIN, District Judge.

**\*1**  This action arises out of the alleged denial of access to a particular mental health services program to Plaintiffs' decedent Frank Kucharczyk ("Decedent"), a mentally ill person who was at all relevant times incarcerated in the New York State prison system. Plaintiffs Joy Maccharulo and Dolores Kucharczyk ("Plaintiffs"), Co–Administrators of Decedent's estate, assert claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et*

*seq.* ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act"). In their Second Amended Complaint ("SAC"), Plaintiffs name as defendants the New York State Department of Correctional Services ("DOCS"), the New York State Office of Mental Health ("OMH"), and the Central New York Psychiatric Center ("CNYPC") (collectively, "Defendants"). The Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. § 1331. Defendants have moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered thoroughly the parties' submissions. For the following reasons, Defendants' motion is granted in its entirety.

*BACKGROUND*

Plaintiffs' Second Amended Complaint asserts claims under ADA Title II and Section 504 of the Rehabilitation Act against DOCS, OMH, and CNYPC. (SAC ¶¶ 8–11.) The following facts are alleged in the SAC and are taken as true for purposes of this motion practice. *See Roth v. Jennings,* 489 F.3d 499, 501 (2d Cir.2007). Decedent, at the time of his death in 2004, was a 44–year–old man who suffered from paranoid schizophrenia. Symptoms of paranoid schizophrenia include a limited ability to communicate, control impulses, and interact appropriately with others. (SAC ¶¶ 14–15.)

On October 31, 2002, Decedent was sentenced to a term of seven years of incarceration after pleading guilty to attempted robbery and assault. (SAC ¶ 16.) Prior to being assigned to a prison facility, Decedent underwent a mental health screening conducted by CNYPC for an OMH classification and service level designation, which would be relied upon to place him appropriately in the correctional system. The OMH classification system ranks each subject on a scale from level one to level five, with level one subjects requiring and receiving the most intensive mental health treatment. (SAC ¶¶ 17, 19.)

CNYPC concluded that Decedent required psychiatric treatment for a major mental health disorder and classified him as OMH level two. (SAC ¶¶ 17, 19.) Accordingly, he was assigned to Fishkill Correctional Facility ("Fishkill"), a level two facility, on or about January 26, 2003. (SAC ¶ 20, 25.) While he was incarcerated at Fishkill, Decedent's mental health deteriorated significantly. Specifically, Decedent experienced an increased number of auditory hallucinations and severe paranoia. (SAC ¶ 25.) Additionally, Decedent

demonstrated poor judgment and impulse control as a result of his disability and was disciplined for that behavior. For example, on one occasion, Decedent failed to follow an order to return to his desk while participating in Fishkill's pre-GED program. On another occasion, Decedent cursed at a correctional officer. (SAC ¶ 27.) Pursuant to the facility's regular disciplinary measures, Decedent was removed from his pre-GED program and was sent to the Special Housing Unit ("SHU"). (SAC ¶ 27.) Placement in the SHU exacerbated Decedent's mental health problems. (SAC ¶ 23.) In June 2003, the Fishkill staff reclassified Decedent as level one and, accordingly, he was transferred later that month to Auburn Correctional Facility ("Auburn"), a level one facility. While receiving level one treatment at Auburn, Decedent's mental health improved significantly. He was able to attain his GED and to work. (SAC ¶¶ 25, 41–42.)

**\*2** In July 2004, prison employees initiated a request to transfer Decedent back to a level two facility. Decedent wrote a letter requesting that he not be transferred. (SAC ¶¶ 43–44.) However, after spending approximately thirteen months at Auburn, on August 4, 2004, Decedent was transferred back to Fishkill. (SAC ¶ 49.) At Fishkill, Decedent's mental health deteriorated again. He experienced increased paranoia, auditory hallucinations, insomnia, and restlessness. Decedent again began demonstrating poor judgment and impulse control, which led to disciplinary problems. He was punished for his behavior by being placed in the SHU. (SAC ¶ 51–52.) On September 23, 2004, an employee of OMH noted that Decedent's classification would be changed to level one and that he should not be transferred back to a level two facility when his condition improved. (SAC ¶ 35.) Three weeks later, Decedent was transferred to a level one facility. On the day of his transfer, Decedent died of a prescription drug overdose. (SAC ¶ 35–36.)

### DISCUSSION

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Roth v. Jennings,* 489 F.3d 499, 501 (2d Cir.2007); *see also Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)."To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

The ADA is intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."42 U.S.C.A. § 12101(b)(1) (West 2005); *see Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir.2003). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."42 U.S.C.A. § 12132 (West 2005).Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."29 U.S.C.A. § 794(a) (West 2008). The purpose of both statutes is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied."*Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir.1998).Neither the ADA nor the Rehabilitation Act, however, applies to claims regarding the quality of mental health services, *Atkins v. County of Orange,* 251 F.Supp.2d 1225, 1232 (S.D.N.Y.2003), nor do the statutes "create a remedy for medical malpractice,"*Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir.1996) (applying the ADA).

**\*3** Courts generally apply the same legal standards when adjudicating claims arising under ADA Title II and ones arising under the Rehabilitation Act.*Harris v. Mills,* 572 F.3d 66, 73 (2d Cir.2009). Although there are some differences between the statutes, "unless one of those subtle distinctions is pertinent to a particular case, [the Court] treat[s] claims under the two statutes identically."*Henrietta D.,* 331 F.3d at 272. To state a claim under ADA Title II, plaintiffs must allege that: "(1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities."*Id.* (quoting 42 U.S.C.A § 12132); *see also Harris,* 572 F.3d at 73–74. In addition, to state a claim under the Rehabilitation Act, plaintiffs

must demonstrate that the entity defendant receives federal funding. *Id.* Here, there is no dispute that Plaintiffs have adequately alleged that Decedent falls under the protection of ADA Title II and the Rehabilitation Act (SAC ¶¶ 14) and that Defendants are subject to the provisions of the ADA and the Rehabilitation Act (SAC ¶¶ 38–39).

Under the ADA, public entities are obligated to make reasonable accommodations for disabled individuals to ensure that they have meaningful access to public benefits. *See Henrietta D., 331 F.3d at 273.* Similarly, the Rehabilitation Act requires that qualified disabled individuals "receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations."*Powell v. National Bd. of Medical Examiners, 364 F.3d 79, 85 (2d Cir.2004).* The purpose of these requirements is to ensure that services provided to non-disabled individuals are not denied to disabled individuals because of their disability.*Pfrommer, 148 F.3d at 83.* Therefore, when there is no allegation of "disparate treatment," *Atkins, 251 F.Supp.2d at 1232,* between disabled and non-disabled individuals, the plaintiff has not stated a claim under the ADA or the Rehabilitation Act. *Id.; see Pfrommer, 148 F.3d at 83.* Moreover, neither the ADA nor the Rehabilitation Act requires that all disabled individuals who are receiving public services be provided with identical benefits. *Flight v. Gloeckler, 68 F.3d 61, 63 (2d Cir.1995).* Thus, a claim that challenges the adequacy, *Pfrommer, 148 F.3d at 82,* or the substance, *id. at 84,* of services that are being provided to a disabled individual is not a valid claim under either the ADA or the Rehabilitation Act. *See Atkins, 251 F.Supp.2d at 1232.*

Plaintiffs' Amended Complaint is one that challenges the adequacy of services rather than the denial to disabled persons of access to programs or services provided to non-disabled individuals. Specifically, Plaintiffs argue that Decedent was denied the opportunity to receive level one services on account of his schizophrenia. Plaintiffs allege that the specific nature of schizophrenia is such that, when treated properly (as it was when Decedent was incarcerated at Auburn and receiving level one services), its symptoms recede. Because Decedent did not manifest the symptoms of his disability while at Auburn, Defendants transferred him back to a level two facility and removed his access to level one services —despite the fact that Plaintiff continued to require those services. Plaintiffs argue that Defendants denied Decedent access to level one services because of the particular nature of his disability, that is, because he suffered from a disability

whose symptoms would lie dormant while he was in receipt of proper care (SAC ¶¶ 3–4), and that Defendants' decision to transfer Decedent out of the level one program despite his latent schizophrenia violated the ADA and the Rehabilitation Act.

**\*4** Plaintiffs also allege that, while Decedent was at Fishkill, Defendants disciplined Decedent by placing him in the SHU. Plaintiffs allege that Defendants should have recognized that Decedent's misbehavior owed to the inadequacy of the level two services and they should have responded by providing him with level one services rather than by imposing disciplinary measures. (SAC ¶ 4.) Plaintiffs do not allege, however, that Decedent was denied the level two services that he otherwise received at Fishkill while he was in the SHU.

Defendants contend that Plaintiffs have not stated a claim that Decedent was excluded from participating in a prison program, benefit, service, or activity by reason of his disability. Rather, Plaintiffs' allegations regarding Decedent's placement in a level two facility and his disciplinary relegation to the SHU challenge the adequacy of the mental health treatment that Decedent received but do not allege the type of denial of services that is required to state a claim under the ADA or the Rehabilitation Act.

ADA Title II and the Rehabilitation Act require that public entities and entities that receive federal funding make "reasonable accommodations" for disabled individuals to enable them to participate in programs, and secure services, offered to the non-disabled population. *Powell, 364 F.3d at 84–85.* Read in the light most favorable to Plaintiffs, the Second Amended Complaint pleads that Decedent was at all relevant times provided with mental health services in an effort to accommodate his particular mental health disability and that he was specifically provided with level one services at various times throughout his incarceration. Plaintiffs' complaint regarding the failure to provide consistent access to the level one treatment program is, on its face, one having to do with a program provided to persons with disabilities, rather than one provided to non-disabled persons. Plaintiffs' complaint thus is a challenge to the adequacy and the nature of the mental health services Decedent was receiving rather than a claim that Decedent was wrongfully denied a public service. A challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services provided to non-disabled persons, is not a valid claim under the ADA or the Rehabilitation Act. *See Pfrommer, 148 F.3d at 82; Atkins, 251 F.Supp.2d at 1231.*

Plaintiffs' argument that Defendants violated ADA Title II and the Rehabilitation Act by placing Decedent in the SHU rather than providing him with level one services when he manifested poor impulse control as a result of his disability also fails to state an actionable claim under the ADA or the Rehabilitation Act. Plaintiffs do not plead facts demonstrating that Decedent was treated differently from non-disabled individuals exhibiting the same behavior. Rather, their assertion is that Decedent could, with different and more intensive treatment for his particular disability, have been enabled to avoid the offending behavior. Like that of the plaintiffs in *Atkins v. County of Orange* (discussed below), their complaint falls outside the purview of the ADA and the Rehabilitation Act. 251 F.Supp.2d at 1232.

 **\*5** In *Atkins v. County of Orange,* mentally ill inmates asserted claims under ADA Title II and the Rehabilitation Act, alleging that the defendants discriminated against them by placing them in keeplock isolation as punishment for demonstrating symptoms of their mental illness. *Atkins,* 251 F.Supp.2d at 1231. The *Atkins* Court held that the plaintiffs had not stated an actionable claim under either the ADA or the Rehabilitation Act because they were not alleging "that the mentally disabled are the only prisoners subjected to this procedure while the non-mentally disabled prisoners are excluded therefrom."*Id.* at 1232.Rather, prison procedures mandated that any inmate who "presents risk of danger to self or others" would be placed in keeplock isolation. *Id.* Therefore the placement of individuals in keeplock isolation applied equally to all inmates who demonstrated dangerous behavior and did not reflect discrimination against any particular group on account of their disability. *Id.* Similarly, Plaintiffs here do not allege that only mentally disabled prisoners are punished by being placed in the SHU, or that prisoners who are not disabled are provided with more appropriate alternatives to the SHU. As in *Atkins,* there

are no allegations in Plaintiffs' pleading to support any inference other than that Prisoners who misbehave similarly are disciplined similarly. Because the purpose of the ADA and the Rehabilitation Act is to "eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied,"*Pfrommer,* 148 F.3d at 82, a claim that does not allege such discriminatory treatment is not a viable claim under either statute. *See Atkins,* 251 F.Supp.2d 1232.

In sum, Plaintiffs' contentions that Decedent was inappropriately denied level one services while in a level two facility and while placed in the SHU are challenges to the adequacy of the mental health services that Decedent received. The unfortunate circumstances alleged here notwithstanding, neither the ADA nor the Rehabilitation Act provides a cause of action for challenges to the quality of mental health services provided or for allegations of negligent medical malpractice. *Bryant,* 84 F.3d at 249; *Atkins,* 251 F.Supp.2d at 1232. Therefore, Plaintiff have not stated a claim upon which relief can be granted under ADA Title II or the Rehabilitation Act.

### *CONCLUSION*

For the foregoing reasons, Plaintiffs' ADA Title II and Rehabilitation Act claims against DOCS, OMH, and CNYPC are dismissed. This Order Resolves docket entry no. 29. The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 2899751

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of
New York, David L. Cochran, Esq., of Counsel, New York,
NY, for Defendants.

### DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

**\*1** This *pro se* civil rights action, brought pursuant
to 42 U.S.C. § 1983, was referred to the Hon. George
H. Lowe, United States Magistrate Judge, for a Report-
Recommendation pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c).

The Report-Recommendation dated September 12, 2008
recommended that Defendants motion to dismiss be
granted in part and denied in part. Specifically, Judge
Lowe recommended that Plaintiff's Fourteenth Amendment
procedural due process claim against Defendant Varkiar
regarding his disciplinary hearing be dismissed if, within
thirty (30) days from the filing of this Final Order, Plaintiff
does not file an Amended Complaint that successfully states a
Fourteenth Amendment procedural due process claim. It was
recommended that Plaintiff's remaining claims be dismissed
with prejudice.

Plaintiff filed objections to the Report-Recommendation,
essentially raising the same arguments presented to the
Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a *"de novo*
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made."*See* 28 U.S.C. § 636(b)(1). After such a review, the
Court may "accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate judge.
The judge may also receive further evidence or recommit the
matter to the magistrate judge with instructions."*Id.*

Having reviewed the record *de novo* and having considered
the issues raised in the Plaintiff's objections, this Court
has determined to accept and adopt the recommendation of
Magistrate Judge Lowe for the reasons stated in the Report-
Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be
**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant
to 42 U.S.C. § 1983, has been referred to me by the Honorable
Thomas J. McAvoy, Senior United States District Judge, for
Report and Recommendation with regard to any dispositive
motions filed, pursuant to 28 U.S.C. § 636(b) and Local
Rule 72.3(c). Generally, in his Complaint, Raymond Robles
("Plaintiff") alleges that three employees of the New York
State Department of Correctional Services ("DOCS"), as
well as DOCS itself, violated his rights under the Eighth
and Fourteenth Amendments when they (1) required him to
submit to a random urinalysis test when they knew he was
taking a medication that would prevent him from providing a
urine sample, and (2) charged, convicted, and punished him
with eighty-seven days in a Special Housing Unit for refusing
to provide a urine sample. (*See generally* Dkt. No. 1 [Plf.'s
Compl.].) Currently pending before the Court is Defendants'
motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that

follow, I recommend that Defendants' motion be granted in part and denied in part.

# I. BACKGROUND

## A. Summary of Plaintiff's Complaint

**\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.;[2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing;[3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes;[4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom at approximately 7:10 a.m. that morning, he would need more water in order to urinate;[5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff;[6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide a urine sample;[7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937;[8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample;[9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample;[10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back";[11]

**\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.;[12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U.");[13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample;[14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report;[15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

### B. Summary of Grounds in Support of Defendants' Motion

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal

requirement.[31] However, it is well established that even this liberal notice pleading standard "has its limits."[32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007).[34] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief,"Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."*Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ).[35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2).*Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality .[40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[43] Of course, an opportunity to amend is not required where "the problem

with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [49]

### III. ANALYSIS

### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any "*person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws .... "[51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

**\*7** For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted. [55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [56] that simply cannot be overlooked.

### C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine

**Sample Given Their Knowledge of His Medications and/
or Medical Condition**

Among Plaintiff's claims is a claim that "[i]t is neither
lawful nor [ ] reasonable to expect an Inmate to perform
a bodily function on command when you know or should
know that his medical condition and prescribed treatment
plan indicate that when he urinates[,] and when he [can]
not[,] can be beyond his control."(Dkt. No. 17, at 5 [Plf.'s
Response Affid.].) I liberally construe this claim as one of
harassment or perhaps inadequate-prison-conditions under
the Eighth Amendment. (To the extent that this allegation is
also used to support a procedural due process claim under the
Fourteenth Amendment, I address that claim below in Parts
III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment
claim is that the rather detailed facts alleged by him
in support of that claim do not suggest in any way
that any of the three individual Defendants were acting
with the sort of mental state that is required for them
to incur liability under the Eighth Amendment, namely,
*deliberate indifference.*Deliberate indifference is a state of
mind akin to *criminal recklessness,* which involves *knowing*
of and disregarding an excessive risk to inmate health
or safety. [57] Here, Plaintiff himself alleges that the three
individual Defendants did not in fact *understand* that he could
not urinate due to his prostate condition. Indeed, as he was
trying to explain his medical condition to Defendants, (1)
Defendant Bleau became angry and "walked away" from
Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up,"
and (3) Defendant Varkiar failed to call back the person in
the medical unit of Riverview C.F. and ask him or her to
report (to Varkiar) the impact of Plaintiff's prostate condition
on his ability to urinate. *See, supra,* Part I.A. of this Report-
Recommendation. [58]

At its heart, Plaintiff's Eighth Amendment claim alleges that
the three individual Defendants *should have known* that he
could not urinate during the time in question due to his
enlarged prostate, but that they did not know that fact because
they *failed to investigate* the nature and effects of his prostate
condition. In other words, his Eighth Amendment claim is
one of *negligence.*Such a claim is simply not actionable under
the Eighth Amendment (or any constitutional provision).
As is often observed, "[D]eliberate indifference describes a
state of mind more blameworthy than negligence." [59] Finally,
because the defect with this detailed claim is substantive

rather than merely formal, I find that better pleading will not
cure it. [60]

For all of these reasons, I recommend that the Court dismiss
with prejudice Plaintiff's Eighth Amendment claim.

**D. Whether Plaintiff Has Stated an Actionable Claim
Against Defendants Bleau and Peacock Arising Out
of His Receipt of an Erroneous or False Misbehavior
Report**

It is well established that "a prison inmate has no general
constitutional right to be free from being falsely accused in a
misbehavior report."*Boddie v. Schnieder,* 105 F.3d 857, 862
(2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951
[2d Cir.1986] ). [61] Rather, the only way that false accusations
contained in a misbehavior report can rise to the level of
a constitutional violation is when there is "more, such as
retaliation against the prisoner for exercising a constitutional
right."*Boddie,* 105 F.3d at 862;*accord, Murray v. Pataki,* 03-
CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26, 2007 WL
965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations
omitted].

Here, Plaintiff alleges no actionable conduct regarding
his being issued the misbehavior report in question, such
as retaliation against him for exercising a constitutional
right. *See, supra,* Part I.A. of this Report-Recommendation.
Moreover, because the defect with this detailed claim is
substantive rather than merely formal, I find that better
pleading will not cure it. [62]

**\*9** For these reasons, I recommend that the Court dismiss
with prejudice Plaintiff's Fourteenth Amendment false-
misbehavior-report claim.

**E. Whether Plaintiff Has Stated an Actionable Claim
Against Defendant Varkiar Arising Out of Plaintiff's
Erroneous or Unjustified Disciplinary Conviction**

"[Courts] examine procedural due process questions in two
steps: the first asks whether there exists a liberty or property
interest which has been interfered with by the State ...; the
second examines whether the procedures attendant upon that
deprivation were constitutionally sufficient .... " *Kentucky
Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct.
1904, 104 L.Ed.2d 506 (1989). With regard to the first
question, in 1995, the Supreme Court held in *Sandin v.
Connor* that liberty interests protected by the Fourteenth

Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully).*See, supra,* Part I.A. of this Report-Recommendation.

*10 Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ....“ 42 U.S.C. § 1983 [emphasis added]. The term “the Constitution and laws” refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is “merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion,” which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way “issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint”-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be *GRANTED* **in part** and *DENIED* **in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary

hearing be *DISMISSED* if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be *DISMISSED* **with prejudice,** and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a) (2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 4693153

Footnotes

30  *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1  *See, infra,* note 41 of this Report-Recommendation (citing cases).

2  (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3  (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

**4** (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

**5** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

**6** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

**7** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

**8** (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

**9** (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

**10** (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

**11** (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

**12** (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

**13** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

**14** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

**15** (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

**16** (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

**17** (*Id.*)

**18** (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

**19** (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

**20** (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

**21** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

**22** (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

**23** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

**24** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

**25** (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

**26** *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

**27** *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6),

that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,*331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28 *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29 *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48);*see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31 *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32 *2 Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

33 *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see*Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2).*See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001 ] ).

34 The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint....*Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."*Twombly,* 127 S.Ct. at 1969.

35 *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.")* [emphasis in original].

**36** *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

**37** For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

**38** *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

**39** *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

**40** *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

**41** "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."*Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

**42** *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

**43** *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44     *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45     *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46     *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47     *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

48     *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49     *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50     *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

51     42 U.S.C. § 1983 [emphasis added].

52     *See, supra,* note 4 of this Report-Recommendation.

53     *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he

is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

54    *See, infra,* note 41 of this Report-Recommendation (citing cases).

55    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ....“

56    As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57    *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58    In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59    *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

60    *See, supra,* note 44 of this Report-Recommendation.

61    *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008) (Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19,

2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62  *See, supra,* note 44 of this Report-Recommendation.

63  *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U. where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population).

64  *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States.")* (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws'*of the United States.")* [emphasis added].

66  *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67  *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68  *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

69    *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted; s*ee also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

---

**End of Document**                            © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1893340
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Selam SELAH, Plaintiff,
v.
Brian FISCHER, et al., Defendant.

Civil Action No. 9:09–cv–1363 (GLS/DEP).
|
Signed April 15, 2015.

**Attorneys and Law Firms**

Selam Selah, Cape Vincent, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney
General, Christopher W. Hall, Esq., Assistant Attorney
General, of Counsel, Albany, NY, for the Defendants.

---

### ORDER

GARY L. SHARPE, Chief Judge.

 **\*1** The above-captioned matter comes to this court
following a ReportRecommendation by Magistrate Judge
David E. Peebles, duly filed March 24, 2015. Following
fourteen days from the service thereof, the Clerk has sent
the file, including any and all objections filed by the parties
herein.

No objections having been filed, and the court having
reviewed the Magistrate Judge's Report–Recommendation
for clear error, it is hereby ORDERED that the Report–
Recommendation of Magistrate Judge David E. Peebles filed
March 24, 2015 (Dkt. No. 223) is ACCEPTED in its entirety
for the reasons stated therein; and it is further

ORDERED that defendants' motion for summary judgment
(Dkt. No. 198) is granted, and that all remaining claims set
forth in plaintiff's complaint are DISMISSED; and it is further

ORDERED that the Clerk close this case and provide a copy
of this Order to the parties in accordance to the local rules.

IT IS SO ORDERED.

---

### REPORT AND RECOMMENDATION

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiff Selam Selah, a New York State prison
inmate, has brought this action against the Commissioner
of the New York State Department of Corrections and
Community Supervision ("DOCCS") and several present or
past DOCCS employees, pursuant to 42 U.S.C. § 1983,
alleging that they have deprived him of his civil rights. In
his complaint, as amended, plaintiff alleges, *inter alia,* that
defendants have failed to accommodate his religious beliefs
and permit him to practice his chosen religion, while members
of other religions are treated more favorably, and have thereby
violated his constitutional rights to freely exercise his chosen
religion and to equal protection in violation of the First and
Fourteenth Amendment, as well as the Religious Land Use
and Institutionalized Person Acts ("RLUIPA"), 42 U.S.C. §
2000cc *et seq.*

Now that discovery in the action is closed, the defendants
remaining in the action have moved for summary judgment
dismissing plaintiff's claims on the basis of lack of personal
involvement and on the merits, additionally asserting their
entitlement to qualified immunity from suit. For the reasons
set forth below, I recommend that defendants' motion be
granted.

## I. BACKGROUND [1]

Plaintiff is a prison inmate currently in the custody of the
DOCCS. *Dkt. No. 84.* While it is clear from plaintiff's prolific
filings in this case that he believes the failure to accommodate
his religious beliefs is systemic throughout the DOCCS and
the many facilities which it operates, the claims set forth in
plaintiff's amended complaint stem from events occurring at
Gouverneur Correctional Facility ("Gouverneur"), where he
was confined from May 1,2009, until May 17, 2010. [2] *Dkt.
No. 84 at 15; see also Dkt. No. 198–4 at 3.*

Plaintiff subscribes to the religious tenets of the Ethiopian
Orthodox Christian faith, also known as Ethiopian/Egyptian
Coptic Orthodox Christianity ("EOC"). *Dkt. No. 84 at 9.*
According to plaintiff, EOC is "similar to Orthodox Judaism"
and "virtually identical" to Rastafarianism, with the exception
that Jesus Christ is recognized by EOC followers as the
Messiah, but is not by Rastafarians and Jews. *Id.* at 5, 9.
Members of EOC observe several major and minor holy days,

including (1) Ethiopian Christmas, (January 7) to celebrate the birth of Jesus; (2) Ethiopian Epiphany/Revelation of Holy Trinity (January 19); (3) Ethiopian Empress Menen's birthday/Annunciation to Virgin Mary (March 25); (4) Palm Sunday; (5) Holy Friday; (6) Ascension Thursday (40 days following the Ethiopian Easter); (7) Ethiopian Emperor Haile Selassie's birthday (July 23); (8) the Ethiopian New Year (September 11); (9) the Coronation of Haile Selassie I (November 2); and (10) Ethiopian Liberation Day (May 5).*Dkt. No. 84 at 2*, 5. In addition, EOC followers observe Wednesdays and Fridays as holidays when they must fast, and Saturdays and Sundays as days of rest during which they are forbidden from "perform[ing] secular tasks of menial or servile labor[.]"*Id.* at 5. The followers of EOC subscribe to Old Testament dietary laws, similar to those followed by Orthodox Jews, with heavy emphasis placed on observing "Kosher" dietary requirements. *Id.*

**\*2** In his amended complaint, plaintiff alleges that he and other EOC followers have been discriminated against by prison officials in various ways, including through defendants' (1) refusal to recognize EOC as a religion in the DOCCS statewide correctional system database; (2) refusal to permit him and other EOC followers to possess and display headgear, a prayer shawl, prayer girdle, prayer rug, and other religious attire and artifacts consistent with their beliefs; (3) refusal to allow members of his sect to observe and commemorate the major and minor holy days; (4) failure to permit plaintiff to participate in EOC congregate religious services and education; (5) failure to provide meals consistent with Old Testament dietary laws; (6) failure to permit the plaintiff and other EOC believers to wear beards and dreadlocks or braids; and (7) refusal to exempt the plaintiff and other EOC members from work on Saturdays and Sundays. *See generally Dkt. No. 84.*

The policies and practices regarding ministerial services and religious programs in the New York prison system are governed by DOCCS Directives Nos. 4200 and 4202, as well as the DOCCS's religious holy day calendar. *Dkt. No. 198–4 at 2; Dkt. No. 198–5 at 2–3.*Responsibility for implementation of those policies is entrusted to the DOCCS Office of Family, Ministerial, and Volunteer Services ("OFMVS") which, in turn, relies upon chaplains at the various individual correctional facilities to meet the pastoral needs of inmates of varying religious faiths. [3] *Dkt. No. 198–4 at 2.* At the local facility level it is the prison superintendent's duty, in the first instance, to ensure compliance with DOCCS religious policies. *Dkt. No. 198–8 at 2.* In the case of

Gouverneur, that responsibility was delegated to the deputy superintendent for programs, who in turn relied upon the coordinating chaplain to attend to the pastoral needs of the facility's inmates. *Id.*

Plaintiff complained to various DOCCS officials claiming that his religious beliefs were not being accommodated, while Rastafarians were provided many of the same accommodations sought by him. *Dkt. No. 84 at 5,* 6–7, 11–13. The alleged failure of prison officials to accommodate plaintiff's religious beliefs was the subject of multiple grievances filed by Selah while at Gouverneur. *Dkt. No. 198–8 at 3; Dkt. No. 198–9; Dkt. No. 198–10; Dkt. No. 198–11; Dkt. No. 198–12; Dkt. No. 198–13.*The first two, which were addressed separately by the Inmate Grievance Review Committee ("IGRC") at Gouverneur and the facility superintendent before being consolidated on review by the Central Office Review Committee ("CORC"), are identified as GOV–14596–09 and GOV–14611–09, and were filed on May 4, 2009, and May 11, 2009, respectively. *Dkt. No. 198–9 at 4,* 11. Those grievances alleged religious discrimination generally and requested that EOC be recognized by the DOCCS. [4] *Id.* Following the IGRC's denial of both grievances, defendant Justin Taylor, the superintendent at Gouverneur at the time, advised plaintiff that, to the extent the grievances sought to establish policy concerning a departmental issue, neither the IGRC nor he had the authority to make those changes. *Dkt. No. 198–9 at 8,* 18. The superintendent's determinations were upheld on review to the CORC on July 8, 2009. *Dkt. No. 198–9 at 2.* In its decision, the CORC noted the following:

**\*3** [T]he grievant is free to practice his chosen religion and although the department takes no position on it, ministerial services staff will attempt to accommodate the grievant if feasible. This will, however, require that the grievant provide ministerial staff with the name and address of his church and a clergy member whom they may contact to verify religious tenets. Having done so, the grievant may then request approval for head wear, a beard permit and clergy visitation. CORC notes that the grievant has been advised that proselytizing is prohibited by Directive # 4202. CORC advises the grievant to address any further concerns regarding the Cold Alternative Diet (CAD) to the Food Service Administrator and any specific religious concerns to the Coordinating Chaplain for the most expeditious means of resolution.

*Id.*

Plaintiff's second grievance, GOV–14641–09, was filed on May 28, 2009, and alleged that he was wrongfully denied his request to the Food Service Administrator at Gouverneur that he be provided fish, poultry, nuts or fruits, instead of beef or lamb, on Wednesdays and Fridays, which, according to plaintiff, are fasting days for EOC followers. *Dkt. No. 198–10 at 6.* Plaintiff also complained in the grievance that he was precluded from "enjoy [ing] congregate religious services," claimed that he should be exempt from the DOCCS initial haircut and beard-length policies and the "ppd T.B. skin test," and also contended that he should be permitted to wear a crown in accordance with his faith.[5] *Id.* at 8. The IGRC and defendant Taylor both again denied plaintiff's grievance because, based on their interpretation of plaintiff's grievance, he was seeking a change to a departmental policy, a matter beyond the authority of both the IGRC and superintendent. *Id.* at 4, 10. The CORC upheld that determination by memorandum dated July 8, 2009, with the same notation included in response to grievance numbers GOV–14596–09 and GOV–14611–09. *Id.* at 2; *Dkt. No. 198–9 at 2.*

On October 19, 2009, plaintiff filed yet another grievance at Gouverneur, identified as GOV–15011–09, involving religion, on this occasion requesting clarification of the religious holidays recognized by the DOCCS.[6] *Dkt. No. 198–11 at 4.* In response, defendant Taylor noted that "[a]ll required holidays and religious celebrations are determined by [the DOCCS] Central Office," whose dictates in that regard are followed at each particular facility. *Dkt. No. 198–11 at 6.* Defendant Taylor also referred plaintiff to the DOCCS religious holy day calendar.[7] *Dkt. No. 198–11 at 6.* The CORC affirmed defendant Taylor's determination on January 13, 2010, and Selah was advised "to address any further concerns regarding religious and cultural holidays to the Director of Ministerial, Family and Volunteer Services in [the DOCCS] Central Office." *Dkt. No. 198–11 at 2.*

In his fifth grievance, GOV–15083–09, filed on November 18, 2009, plaintiff requested that EOC be recognized by the DOCCS throughout the statewide correctional system as a legitimate religion, and that he and other EOC followers be afforded the right to celebrate and observe EOC religious and national holidays, be exempted from assigned work on recognized holy days, and be allowed to participate in religious fasts, feasts and festivals.[8] *Dkt. No. 198–12 at 4.* On December 2, 2009, the IGRC responded by advising plaintiff to discuss his problems or concerns with the facility chaplain. *Dkt. No. 198–12 at 5.* That determination was

upheld by defendant Taylor, who reiterated the reminder to plaintiff that he should direct concerns regarding religious dietary constraints to "the Food Service Administrator and any specific religious concerns to the coordinating Chaplain[.]" *Dkt. No. 198–12 at 6.* The CORC rejected plaintiff's appeal of defendant Taylor's determination on February 24, 2010. *Dkt. No. 198–12 at 2.* In its determination, the CORC "note[d] that the grievant is free to practice his chosen religion and although the department takes no position on it, ministerial services staff will attempt to accommodate the grievant if feasible." *Id.* The CORC further stated that any accommodation would require that Selah provide "ministerial staff with the name and address of his church and a clergy member whom they may contact to verify his religion's tenets." *Id.* Addressing plaintiff's concern regarding the DOCCS's recognition of his religion, the "CORC further note[d] that it is not possible to include every religion on the NYS DOCs computer system[,]" and for that reason, plaintiff's "religious designation is indicated as 'other.' "

**\*4** Plaintiff's sixth and seventh grievances at Gouverneur concerning his religious rights, identified as GOV–15184–10 and GOV–15219–10, were filed on January 19, 2010, and February 8, 2010, respectively. *Dkt. No. 198–13 at 7–11,* 18–24, 47–50. Grievance number GOV–15184–10 generally alleges that Selah was the subject of an improper misbehavior report charging him with, *inter alia,* smuggling food from the mess hall. *Id.* at 47–50. Plaintiff alleged that he intended to bring food out of the mess hall because he was observing a fast and intended to eat the food later in the day in accordance with EOC doctrine. *See generally id.* In grievance number GOV–15219–10, plaintiff complains that the DOCCS does not recognize his religion and has unfairly placed the responsibility on him to notify the DOCCS of his religious needs.[9] *See generally id.* at 7–11, 18–24. The facility's IGRC responded to grievance number GOV–15219–10, on February 18, 2010, recommending that plaintiff correspond in writing directly to defendant Thomas Kilian, the Senior Chaplin at Gouverneur, concerning any issues regarding policies or procedures related to religious practices.[10] *Id.* at 12. Similarly, the IGRC responded to grievance number GOV–15184–10 on January 28, 2010, by advising plaintiff to correspond with defendant Kilian. *Id.* at 39. The determinations by the IGRC regarding those two grievances were affirmed by defendant Taylor in his responses dated February 16 and 24, 2010, which in relevant part, instructed plaintiff to coordinate his religious needs with defendant Kilian. *Id.* at 25, 40. Defendant Taylor's

determinations were upheld by the CORC on August 4, 2010, in a decision that consolidated both grievance numbers GOV–15184–10 and GOV–15219–10. *Id.* at 2. In its decision, the CORC noted that, pursuant to DOCCS Directive No. 4202, in cases where a religion is not represented by certified chaplains, the DOCCS "will seek advice on matters of religious doctrine, practice and tradition from recognized religious authorities in the outside community."*Id.* The CORC further noted that a DOCCS Chaplain had met with the plaintiff on July 6, 2010, to discuss his religious demands, and the Chaplain contacted "a recognized religious authority in the outside community."*Id.* The CORC concluded that it "has not been presented with sufficient evidence to support the grievant's claim that the Department has not accommodated the legitimate spiritual needs of the grievant as reasonably as possible in a manner which is commensurate with its legitimate correctional interests and the safety and security of its respective facilities." [11] *Id.*

In his position as coordinating chaplain at Gouverneur, defendant Kilian serves as the principal advisor to the superintendent on matters regarding religious programs and practices and is responsible for planning the overall religious program at the facility, in collaboration with other chaplains assigned there. *Dkt. No. 198–4 at 1.* Defendant Kilian interacted with the plaintiff while he was at Gouverneur and repeatedly advised that, in order for him to obtain his assistance in accommodating Selah's beliefs, plaintiff needed to inform defendant Kilian, in writing, of his dietary requirements, the holy days he wished to observe, and the religious books and articles that he desired to possess. *Id.* at 2–3. Defendant Kilian also repeatedly asked Selah to provide the name of a clergy person he wished to have visit, and indicated that, if possible, he would facilitate the visit. *Id.* at 3.

 **\*5** Defendant Kilian met with Selah on February 11, 2010. *Dkt. No. 198–4.*During that meeting, Kilian informed Selah that he was to correspond directly with Kilian concerning religious matters and was instructed to provide a specific list or request concerning the facilitation of any religious observants. *Dkt. No. 198–4 at 6.* On the day of the meeting, plaintiff signed a memorandum from defendant Kilian specifically instructing him to provide any religious-based requests to Kilian, as the coordinating chaplain, in writing. *Dkt. No. 201 at 27.*Plaintiff acknowledged that he would provide defendant Kilian with a list of EOC holy days. *Id.* Plaintiff's failure to comply with that directive resulted in the issuance of a misbehavior report for not following facility procedures. *Id.* at 25.

Between February 12 and February 15, 2010, Kilian received "voluminous responses" from the plaintiff concerning his needs. *Dkt. No. 198–4 at 6.* The materials submitted by Selah were forwarded by Kilian to Omega Austin, the Assistant Director of OFMVS with a notation that Selah's religion was listed in departmental records as "other" and that he was placed on an Cold Alternative Diet ("CAD") to accommodate his religious dietary requirements, and additionally had been relieved of work and programs for the holy day of Ethiopian Christmas. *Id.; Dkt. No. 201 at 35.*Kilian requested that Austin provide additional instructions regarding plaintiff's requests. *Dkt. No. 201 at 35.*Further correspondence from Selah was forwarded by defendant Kilian on March 25, 2010, to Deacon Donald T. Sharrow, at the DOCCS Central Office. *Dkt. No. 198–4 at 6–7.*In his cover letter accompanying those materials, defendant Kilian indicated he would advise plaintiff of the need to provide a name and address of an EOC clergy as directed by the CORC. *Dkt. No. 201 at 106.*Defendant Kilian did not receive any further correspondence regarding plaintiff through the date of Selah's transfer out of Gouverneur on May 17, 2010. *Dkt. No. 198–4 at 7.*

## II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on December 7, 2009. *Dkt. No. 1.* Since its inception, the action has had an extensive and tortured procedural history that includes over 200 docket entries, and features repetitive serial filings by plaintiff, including, but not limited to, twenty-nine requests for injunctive relief or supplemental materials in support of previously filed requests for injunctive relief, Dkt. Nos. 5, 69, 74, 76, 86–89, 91, 95–96, 99, 102–103, 105–07, 109–10, 131, 155, 157, 164, 176, 182, 189, 211, 214, 220; eight requests for the appointment of *pro bono* counsel or supplemental materials in support of previously filed requests for counsel, Dkt. Nos. 6, 115, 118, 122, 135, 208–09, 211; and twenty-one miscellaneous submissions that seek no relief, seek relief that cannot be obtained from the court, include discovery-related materials but request no specific court intervention, relate to settlement, and/or request copies from the court of voluminous materials submitted earlier by plaintiff, Dkt. Nos. 58, 72, 80–81,83, 108, 117, 119, 142, 144, 147, 150–51, 154, 158, 160, 166, 184, 187, 197, 206.

 **\*6** On September 14, 2011, with leave of court, plaintiff filed an amended complaint, which serves as the currently operative pleading in the case. [12] *Dkt. No. 84.*As defendants,

plaintiff's amended complaint names (1) the DOCCS; (2) the former DOCCS Commissioner, Brian Fischer; (3) the retired DOCCS Chaplain to Rastafarian inmates, Abuna Ammanuel Foxe; (4) the DOCCS Director of the OFMVS, Cheryl Morris; (5) the DOCCS Greek Orthodox Christian Chaplain, Fr. Mantzouris; (6) the Director of the DOCCS Inmate Grievance Program, Karen Bellamy; (7) the Superintendent at Gouverneur, Justin Taylor; (8) the Coordinating Chaplain at Gouverneur, Thomas Kilian; and (9) the former DOCCS Director of OFMVS, Mark Leonard, all of whom are sued in both their individual and official capacities. *See generally id.*Plaintiff's amended complaint asserts three claims, including (1) a violation of his right to freely exercise his chosen religion as guaranteed under the First Amendment; (2) the denial of equal protection in violation of the Fourteenth Amendment; and (3) infringement of his statutory rights under the RLUIPA. *Id.* Plaintiff seeks various forms of monetary, declaratory, and injunctive relief. *Id.*

Since the filing of plaintiff's amended complaint, the defendants have brought three dispositive motions seeking dismissal of the action. In the first, filed on November 21, 2011, they sought dismissal of plaintiff's original complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Dkt. No. 111.*That motion was granted only to the limited extent of ordering dismissal of all claims against the DOCCS. Dkt. Nos. 125, 126. Defendants then filed a motion for judgment on the pleadings on September 17, 2012, pursuant to Rule 12(b)(c) of the Federal Rules of Civil Procedure. *Dkt. No. 136.*That second motion resulted in dismissal of plaintiff's claims against defendants Mantzouris, Bellamy, and Leonard, without leave to replead, but was otherwise denied. Dkt. Nos. 165, 177.

On March 31, 2014, following the close of discovery, defendants moved for the entry of summary judgment dismissing plaintiff's remaining claims, arguing that the record does not adequately reflect the personal involvement of two of the defendants, the plaintiff's claims lack merit, and, alternatively, defendants are all entitled to qualified immunity from suit. *Dkt. No. 198.*Plaintiff has since responded in opposition to defendants' motion. Dkt. Nos. 207, 212, 219. Defendants' motion, which is now fully briefed, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).*See*Fed.R.Civ.P. 72(b).

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."*Anderson,* 477 U.S. at 248; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson,* 477 U.S. at 248.

*7 A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4; *Sec. Ins. Co.,* 391 F .3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party.*Anderson,* 477 U.S. at 255; *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. *Personal Involvement*

In their motion, defendants first contend that the record evidence does not support a finding that defendants Fischer and Foxe were personally involved in the alleged violations of plaintiff's rights under the Constitution or RLUIPA. *Dkt. No. 198–14 at 3–6.*

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Mofitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Iqbal,* 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered ." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hen drickson v. U.S. Attorney Gen.,* No. 91–CV–8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994). [13]

### 1. *Defendant Fischer* [14]

Defendant Fischer, the Commissioner of the DOCCS, is mentioned only four times in plaintiff's amended complaint. *Dkt. No. 84 at 13,* 14, 15–16. Plaintiff alleges that (1) he intends to "keep Defendant[ ] ... Fischer ... as [a] named defendant[ ] in this case," *id.* at 15; (2) members of the prison staff at the Orleans Correctional Facility report to defendant Fischer, *id.;* (3) defendant Fischer, as the Commissioner of the DOCCS, owed plaintiff "a duty of care" related to "[d]efendant Fischer's responsibility for directing policies," *id.* at 13; and (4) defendant Fischer has "consulted with and [has] relied on Defendant Abuna Foxe to assist [him] in authoring and promulgating [DOCCS] rules, directives, regulations and policies concerning Rastafarianism and decisions about Ethiopian/Egyptian Coptic Orthodox Christian doctrine, practices, tradition, beliefs, and observances ... that the Defendants, the [DOCCS] and its agents, have used to subject the Plaintiff ... to religious discrimination and deprivations," *id.* at 14.

**\*8** It appears that plaintiff's claims against defendant Fisher are predicated largely upon his supervisory role as the DOCCS Commissioner. It is wellestablished that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior.*" *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. To establish

responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152–53 (2d Cir.2007), *rev'd on other grounds sub nom.Ashcroft v. Iqbal,* 556 U .S. 554 (2009); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.

In my prior report, addressing plaintiff's motion for judgment on the pleadings, I found that only the fourth allegation listed above against defendant Fischer could give rise to a plausible claim. In doing so, in light of the procedural posture of the case, I generously construed plaintiff's complaint as alleging that defendant Fischer is responsible for promulgating policies that have prevented the plaintiff from (1) possessing and displaying head gear, a prayer shawl, a prayer girdle, a prayer rug, and other appropriate religious attire and artifacts; (2) observing and commemorating holy days; (3) participating in congregate religious services and education; (4) eating meals consistent with Old Testament dietary laws; (5) wearing beards and dreadlocks or braids; and (6) being exempt from work on Saturdays and Sundays. *See generally Dkt. No. 84; Dkt. No. 165 at 14.*

Despite the opportunity for plaintiff to engage in discovery, the record before the court fails to reveal any evidence from which a reasonable factfinder could conclude that defendant Fischer was aware of and failed to remedy any of the constitutional or statutory violations alleged by plaintiff. At this stage of the litigation, the burden is on plaintiff to come forward with evidence giving rise to a genuine dispute of material fact regarding whether defendant Fischer created or enforced DOCCS policies that specifically precluded plaintiff from possessing religious accoutrements, observing and celebrating holy days, participating in congregate services and the appropriate dietary restrictions for EOC, wearing his hair in dreadlocks and/or braids and wearing his beard a certain length, and working on Saturdays and Sundays.

In his response in opposition to defendants' motion, plaintiff includes the following argument:

**\*9** [W]hile the Defendants claim that they have not ... created, implemented, nor carried out any discriminatory prison policies ... [,] in actuality [the DOCCS **Directive # 4040, § 701.5, (d)(2) (ii ) (7/12/06) states in pertinent part: The CORC functions on behalf of the Commissioner and under his authority. CORC decisions have the [same] effect of [Departmental] directives ....** The Departmental Directives are in other words **prison policies ....**

*Dkt. No. 207 at 8* (emphasis and bracketed text in original). This argument appears to suggest that, because the CORC acts on behalf of the DOCCS Commissioner and under his authority, any decision by the CORC has the same force and effect as a departmental directive from the Commissioner, which then becomes controlling prison policy. Even liberally construed, however, this argument misses the mark and merely serves to underscore the fact that defendant Fischer's personal involvement in this case is based on his role as the DOCCS Commissioner. This is not enough at the summary judgment stage to give rise to a dispute of fact regarding personal involvement. Because the record is lacking in any evidence of defendant Fischer's personal involvement in the decisions rendered that allegedly denied plaintiff the right to exercise his chosen religion, I recommend that all claims against him be dismissed.[15]

### 2. *Defendant Foxe*

Defendant Foxe is mentioned five times in plaintiff's amended complaint. *Dkt. No. 84 at 10,* 14–16. Plaintiff alleges that defendant Foxe (1) founded the Ba Beta church of Haile Selassie I sect of Rastafarians, *id.* at 10; (2) is not an expert on plaintiff's religion, *id.* at 14; (3) was excommunicated from the Ethiopian Orthodox Church, *id.;* (4) assisted defendants Fischer and Morris in creating the policies and regulations allegedly responsible for violating plaintiff's rights when they consulted with him, *id.;* and (5) possessed the authority to approve the requests made by Orleans Correctional Facility staff as they relate to plaintiff's religious accommodations, *id.* at 15–16.

Plaintiff's allegations against defendant Foxe were also addressed in my prior report addressing defendants' motion for judgment on the pleadings. I concluded that the first, third, and fifth allegations were legally insufficient to support a finding of liability for damages on the part of defendant Foxe. *Dkt. No. 165 at 16–17.* I further found, however, that given the early procedural stage at which the issue was being raised, the allegations that defendant Foxe contributed to creating and maintaining the DOCCS policies and practices, which, plaintiff alleges, violated his rights were sufficient at that point to state a plausible claim against that defendant. *Id.* at 17.

Now that defendants have moved for summary judgment, the procedural setting has been altered, and the pending motion now requires a careful review of the record to determine whether any evidence has been presented to inculpate defendant Foxe in the violations alleged. Based upon that review, I find that the record now before the court is lacking in evidence to support a finding that defendant Foxe was personally involved in the alleged violations. In his declaration, defendant Foxe denies consulting with defendants Fischer or Morris "concerning the policies of the Division of Family, Ministerial, and Volunteer Services" or "communicat[ing] with [defendants Fischer or Morris] regarding [plaintiff]'s complaints."[16] *Dkt. No. 198–3 at 3.* Moreover, aside from a single discussion between Foxe and the plaintiff "[i]n the latter part of 2010," after plaintiff had been transferred out of Gouverneur, defendant Foxe had "no further contact, in person or in writing, with [plaintiff]." *Id.* In light of the fact that plaintiff has failed to come forward with evidence to contradict these statements, I recommend that his claims against defendant Foxe be dismissed based upon a lack of personal involvement.

### 3. *Defendant Morris* [17]

**\*10** Based on my review of the record, it is not clear how defendant Morris was involved in the alleged violations of plaintiff's rights under the Constitution and RLUIPA. Although in part I. of this report and in my previous report and recommendation, *Dkt. No. 165 at 14–16,* I generously construed plaintiff's amended complaint as suggesting that defendant Morris is responsible for various specific conduct, I find there is no record evidence to support plaintiff's allegations against that defendant. In defendant Morris' declaration submitted in support of defendants' motion, she provides the court with information regarding her role as the Director of the OFMVS, the individuals to whom she reports, and the role the OFMVS serves within the DOCCS, and refers the court to the declarations of defendants Kilian and Taylor

for specific examples of how plaintiff's religious needs were attempted to be served while he was confined at Gouverneur. *See generally Dkt. No. 198–5.*As was mentioned above, defendant Morris denies ever consulting with defendant Foxe concerning plaintiff's requests. *Id.* at 8. As for plaintiff's proof, he has offered no evidence to support his allegations regarding defendant Morris' involvement. While general and conclusory allegations occasionally will permit a plaintiff's claim to pass muster in connection with a motion dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, at the summary judgment stage he is required to set forth evidence that gives rise to a genuine dispute of material fact. Plaintiff's failure to do so in this case is fatal to his claim against defendant Morris. Because I find there is no record evidence from which a reasonable factfinder could conclude that defendant Morris was personally involved in the constitutional and statutory violations alleged, I recommend the dismissal of all claims asserted against her.

## C. *Qualified Immunity*

Defendants contend that they are entitled to qualified immunity from suit in this action based on their conduct as alleged by plaintiff. *Dkt. No. 198–14 at 21–22.*"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."*Reichle v. Howards,* 132 S.Ct. 2088, 2093 (2012); *see also Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Sudler v. City of N.Y.,* 689 F.3d 159, 174 (2d Cir.2012). The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."*Pearson,* 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct. *Sudler,* 689 F.3d at 174 (citing *Saucier v. Katz,* 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson,* 555 U.S. 223)).

 **\*11** Because qualified immunity is "an immunity from suit rather than a mere defense to liability,"*Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation,"*Pearson,* 555 U.S. at 231 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (per curiam)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff,* 642 F.3d 334, 345 (2d Cir.2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a statutory or constitutional right, and if so, whether that right "was clearly established at the time of the challenged conduct."*Terebesi v. Torreso,* 764 F.3d 217, 230 (2d Cir.2014) (citing *Reichle,* 132 S.Ct. at 2093). The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."*Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011) (quotation marks and alterations omitted)."To this end, a plaintiff need not show a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.' " *Terebesi,* 764 F.3d at 230 (quoting *al-Kidd,* 131 S.Ct. at 2083). However, '[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) (citations omitted). This "objective reasonableness" part of the test is satisfied if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v.. Briggs,* 475 U.S. 335, 341 (1986).

After carefully considering the record evidence and the parties' memoranda submitted in connection with defendants' motion, I recommend a finding that defendants are entitled to qualified immunity in this action. Under the circumstances, and even assuming, without deciding, that defendants Kilian and Taylor violated plaintiff's clearly established rights, I conclude that it was objectively reasonable for them to believe that their conduct did not violate plaintiff's rights under the First Amendment or RLUIPA.

### 1. *Defendant Kilian*

According to the record, as early as December 1, 2009, plaintiff was instructed by Deputy Commissioner Kenneth S. Perlman to refer his requests regarding his religious needs to defendant Kilian, the coordinating chaplain at Gouverneur. *Dkt. No. 201 at 2.* On December 23, 2009, plaintiff was again advised by R. Pirie, the DOCCS Deputy Superintendent for Program Services, to refer his religious needs to defendant

Kilian. *Id.* at 6. Pirie's memorandum explained that, in order to obtain assistance in having his religious beliefs met, plaintiff must provide defendant Kilian "specific requests," which would enable him to consult with "those who are authorities on such religious matters, as well as Central Office staff in Ministerial Services[.]"*Id.*

**\*12** According to a letter from plaintiff, dated January 2, 2010, and addressed to several individuals, including defendant Kilian and Pirie, defendant Kilian met with plaintiff in or around that date. *Dkt. No. 102 at 8.* During that meeting, defendant Kilian asked plaintiff "to draft a list of some of the various things and ways that [he] desire[s] and/or request[s] to exercise [his] freedom of religion[.]"*Id.*Plaintiff's letter then asks for EOC to be listed as a religion in the DOCCS database, that EOC "duly be recognized as a bonifide [sic] and legitimate religious designation and religion by the [DOCCS]," that he "and similarly situated inmates" that adhere to EOC be permitted to celebrate "major and minor holy days of significance ... and to be allocated daily kosher meals (at least one hot meal per day) and special holy days meals."*Id.* It appears from the record that defendant Kilian did not receive this letter from plaintiff. Instead, it appears that the letter was sent to and received by Pirie, who responded to the letter in a memorandum dated January 6, 2010, in which Pirie wrote as follows:

> As Deacon Kilian advised you at [your] meeting [with him], you should direct any and all requests for religious assistance to him because he is the Coordinating Chaplain and in the best position to assist you. Therefore, I am forwarding your letter to him so that he may investigate and respond to your requests ....

*Id.* at 21.

Less than a month later, plaintiff again met with defendant Kilian again. *Dkt. No. 198–4 at 6; Dkt. No. 201 at 27.*Defendant Kilian provided plaintiff with a memorandum that stated the following:

> Please be advised that I am in receipt of copies of your recent religious requests and grievance filing. In order to best help you with any religious/faith group matters you may have you must follow these procedures:

> 1. You are to correspond, in writing, with me DIRECTLY regarding any religious/faith group concerns you may have so that I may best serve you in a timely manner.

> 2. You are to provided me DIRECTLY with a specific list or request regarding any matter of religious/ faith group practice that you claim is part of your religious observance that you want facilitated on your behalf. Any list or request will be submitted to Ministerial and Family Services, Central Office, for their recommendation and approval.

*Id.* Plaintiff signed and acknowledged receipt of this memorandum on the same day. *Id.*

Following this meeting, plaintiff provided defendant Kilian with "voluminous" submissions dated February 12, 2010, and February 15, 2010. *Dkt. No. 198–4 at 6; Dkt. No. 201 at 36–104.*Defendant Kilian forwarded plaintiff's submissions to Omega Alston, the Assistant Director Ministerial Services, seeking guidance as to "what further action is to be taken regarding [plaintiff's] religious requests[.]"*Dkt. No. 201 at 35.*Similarly, defendant Kilian submitted additional correspondence received by plaintiff to Deacon Donald T. Sharrow at the Central Office on March 25, 2010. Dkt. No. 106–19. According to defendant Kilian, "[a]s of May 17, 2010, the date of [plaintiff]'s transfer out of Gouverneur, [he] had not received further correspondence concerning [plaintiff]." *Dkt. No. 198–4 at 7.*

**\*13** Aside from the evidence described above, there is nothing in the record before the court regarding defendant Kilian's conduct in this matter. Although plaintiff's amended complaint, liberally construed, alleges defendant Kilian is responsible for denying him various specific religious requests, there is no record to support those allegations. Even assuming, however, that plaintiff's allegations are true, and assuming for the sake of argument that the allegations were sufficient to support a reasonable factfinder's conclusion that defendant Kilian violated plaintiff's rights under the First Amendment and RLUIPA, I find that it was reasonable for defendant Kilian to believe that his responses to plaintiff's letters did not violate his rights. Based on the record before me, it appears defendant Kilian met with plaintiff on two occasions, instructed him to put in writing his specific requests regarding his religious exercise, and forwarded plaintiff's demands to the appropriate personnel within the DOCCS for further guidance. Because I find that no reasonable factfinder could conclude that it was

objectively unreasonable for defendant Kilian to believe that his conduct in this case did not violate plaintiff's clearly established constitutional and statutory rights, I recommend defendant Kilian be afforded qualified immunity from suit and the claims asserted against him be dismissed.

### 2. *Defendant Taylor*

The record evidence reflects that defendant Taylor affirmed the IGRC's denials of each of plaintiff's grievances described in part I. of this report. *Dkt. No. 198–8 at 3–5; Dkt. No. 198–9 at 8,* 18; *Dkt. No. 198–10 at 6; Dkt. No. 198–11 at 6; Dkt. No. 198–12 at 6; Dkt. No. 198–13 at 25,* 40. In addition, defendant Taylor instructed defendant Kilian and Deputy Superintendent Pirie to take specific steps to address plaintiff's religious requests and cooperate with the OFMVS to this end. *Dkt. No. 198–8 at 3,* 5. Having had an opportunity to review plaintiff's grievances and defendant Taylor's responses, I find that no reasonable factfinder could conclude that his conduct was objectively unreasonable or that he knew or should have known that his conduct violated plaintiff's rights under the Constitution or RLUIPA. As defendant Taylor emphasizes, he denied plaintiff's appeals in connection with the grievances based on his belief that plaintiff was seeking relief that he was not authorized to provide, and he provided plaintiff with instructions regarding how to seek the relief requested. *Id.* at 3–5. Moreover, defendant Taylor responded in accordance with DOCCS policies that were in place at the time. *Id.* at 5; *see Green v. Bauvi,* 46 F.3d 189, 195 (2d Cir.1995) ( "[A]dherence to [state regulations] may be pertinent in considering whether a reasonable official would have known his actions violated the Constitution."). Accordingly, even assuming that defendant Taylor violated plaintiff's clearly established rights by denying his appeals from each of his grievances, I recommend defendant Taylor be afforded qualified immunity from suit and the claims asserted against him be dismissed. [18]

### IV. *SUMMARY AND RECOMMENDATION*

**\*14** In this action, plaintiff complains of a host of actions taken by DOCCS employees that allegedly imposed substantial burdens upon his right to freely exercise his chosen religion. After a careful review of the record in the case, I find the record fails to give rise to a genuine dispute of fact regarding whether defendants Fischer, Foxe, and Morris were personally involved in the alleged conduct. In addition, even assuming plaintiff's allegations are true, and without rendering any finding regarding whether defendants did, in fact, violate plaintiff's rights under the First Amendment and RLUIPA, I find that no reasonable factfinder could conclude that it was unreasonable for defendants Kilian and Taylor to believe that their conduct did not violate plaintiff's rights.

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 198) be granted, and that all remaining claims set forth in plaintiff's complaint be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further hereby ORDERED that the clerk serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Filed March 24, 2015.

**All Citations**

Slip Copy, 2015 WL 1893340

---

Footnotes

1    Although plaintiff has opposed defendants' motion for summary judgment, he did not file an opposition to defendants' Local Rule 7.1(a)(3) Statement of Material Facts. By its terms, Local Rule 7.1 provides, in part, that *"[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."*N.D.N.Y. L.R. 7.1(a)(3) (emphasis in original). Courts in this district have routinely enforced this portion of Local Rule 7.1 in cases involving a non-movant's failure to properly respond. See, *e.g., Elgamil v. Syracuse Univ.,* No. 99–CV–0611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2010) (McCurn, J.) (listing cases). Undeniably, *pro se* litigants are entitled to some measure of forbearance when defending against summary judgment motions. *Jemzura v. Public Svc. Comm'n,* 961 F.Supp. 406, 415 (N.D.N.Y.1997) (McAvoy, J.). The deference owed to *pro se* litigants, however

does not extend to relieving them of the ramifications associated with the failure to comply with the court's local rules. *Robinson v. Delgado,* No. 96–CV–0169, 1998 WL 278264, at *2 (N.D . N.Y. May 22, 1998) (Pooler, J., *adopting report and recommendation by* Hurd, M.J.). Stated differently, "a pro se litigant is not relieved of his duty to meet the requirements necessary to defeat a motion for summary judgment."*Latouche v. Tompkins,* No. 09–CV–0308, 2011 WL 1103045, at *1 (N.D.N.Y. Mar. 23, 2011)* (Mordue, J.). Here, because plaintiff was warned of the consequences of failing to properly respond to defendants' Local Rule 7.1 Statement, *Dkt. No. 198 at 3,* and he has failed to do so, I will deem defendants' facts contained in their Local Rule 7.1(a)(3) Statement as having been admitted to the extent they are supported by accurate record citations. *See, e.g., Latouche,* 2011 WL 1103045, at *1; *see also Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). As to any facts not contained in defendants' Local Rule 7.1(a)(3) Statement, in light of the procedural posture of this case, the court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of plaintiff. *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir.2003).

2    Plaintiff's amended complaint also raises issues concerning the alleged failure to accommodate his religious beliefs following his transfer into the Orleans Correctional Facility. *Dkt. No. 84 at 15–16.*

3    The OFMVS operates under the auspices of the DOCCS Deputy Commissioner for Programs. *Dkt. No. 198–2 at 2; Dkt. No. 198–5 at 1.*

4    Defendants did not submit a copy of either grievance number GOV–14596–09 or GOV–14611–09 in support of their motion for summary judgment. *See generally Dkt. No. 198–9.*My description of those grievances, as set forth above, is based upon an official Gouverneur document entitled "Case History and Record." *Id.* at 4, 15. The identity of the individual that prepared the documents is not disclosed. *Id.*

5    Because defendants included a copy of grievance number GOV–14641–09 in support of their motion, my description above is based on my review of the grievance. *Dkt. No. 198–10 at 5–9.*

6    Because defendants did not provide a copy of the original grievance number GOV15011–09, my description above is based on the "Case History and Record" document submitted in connection with the grievance. *See generally Dkt. No. 198–11.*

7    A copy of that document, entitled Religious Holy Day Calendar for the year 2014, was submitted as an exhibit to defendant Morris' declaration in support of defendants' motion. *Dkt. No. 198–7.*

8    Although defendants submitted a copy of the original grievance number GOV–15083–09, the second page is not legible. *Dkt. No. 198–12 at 11.*The first page of the grievance explicitly threatens to sue the DOCCS if it "fail[s] to remedy the wrongs" described in the grievance. *Id.* at 10.

9    Defendants have submitted a copy of grievance numbers GOV–15184–10 and GOV–15219–10 in support of their motion for summary judgment.*Dkt. No. 198–13 at 7–11,* 18–24, 47–50.

10    According to the documents submitted in support of defendants' motion, plaintiff has misspelled this individual's name as "T. Killian." *Compare Dkt. No. 84 with Dkt. No. 198–4.*The clerk of the court is respectfully directed to modify the court's records to reflect the correct spelling of defendant Kilian's name.

11    It appears that, by the time the CORC's decision was rendered with respect to grievance numbers GOV–15184–10 and GOV–15219–10, plaintiff had been transferred out of Gouverneur into another facility. *Dkt. No. 198–13 at 2.* In its decision, the CORC "advise[d] [plaintiff] to address any further religious concerns to the Facility Coordinating Chaplain at his current facility."*Id.*

12    Both the signed version of plaintiff's amended complaint and the proposed pleading proffered by Selah in support of his motion for leave to file that amended complaint appear to be lacking page two and the corresponding allegations included within paragraphs three through a portion of paragraph seven. Dkt. Nos. 68–1 and 84.

13    All unreported decisions cited to in this report have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

14    Anthony Annucci has replaced defendant Fischer as the Acting Commissioner of the DOCCS. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Annucci is automatically substituted for defendant Fischer to the extent defendant Fischer has been sued in his official capacity for purposes of any declaratory or injunctive relief.Fed.R.Civ.P. 25(d).

15    To the extent the assigned district judge does not dismiss this action in its entirety, I recommend dismissal of only the damage claims against defendant Fischer at this time. Because plaintiff also seeks declaratory relief, which could impact DOCCS policies, Anthony Annuci, as defendant Fischer's successor, should remain in the action, in his official capacity, in the event it is necessary to affect declaratory and injunctive relief with respect to the agency.

16    It is worth noting that both defendants Fischer and Morris also deny "consult[ing] with or rely[ing] on defendant Abuna Foxe ... to assist [them] in authoring and promulgating rules, directives, regulations and policies concerning

Rastafarianism and decisions about [EOC] doctrine, practices tradition, beliefs and observances."*Dkt. No. 198–2 at 3: Dkt. No. 198–5 at 8.*

17    Defendants' motion does not challenge the sufficiency of plaintiff's evidence regarding the personal involvement of defendant Morris in connection with the violations alleged. This notwithstanding, I have addressed the personal involvement of defendant Morris *sua sponte* pursuant to the court's inherent authority. *See Williams v. Fischer,* No. 13–CV–0118, 2013 WL 2945396, at *3 (W.D.N.Y. June 12, 2013)* ("A claim which fails to demonstrate a defendant's personal involvement in the alleged constitutional deprivation is subject to *sua sponte* dismissal.); *Winfield v. Bishop,* No. 09–CV–1055, 2010 WL 2773343, at *2 (N.D.N.Y. June 21, 2010)* (Lowe, M.J.), *report and recommendation adopted by*2010 WL 2773346 (N.D.N.Y. July 12, 2010)* (Kahn, J.), (recommending dismissal of a defendant *sua sponte* based on lack of personal involvement).

18    Although defendants seek dismissal of plaintiff's claims on a variety of grounds, because I find their arguments concerning personal involvement and qualified immunity dispositve, I have not addressed the other grounds upon which they rely.

---

**End of Document**                                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.